Dave COX, d/b/a Dave Cox & Company *v.* Jimmy
BISHOP and Brenda Bishop

CA 88-293                                               772 S.W.2d 358

Court of Appeals of Arkansas
Division I
Opinion delivered June 21, 1989

*Stuart Vess* and *Omar Greene*, for appellant.

*Ralph M. Patterson*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal by Dave Cox from the chancellor's order which rescinded appellees' contract for the purchase and installation of a fiberglass swimming pool and refunded to appellees their consideration of $13,500.00.

In 1986, appellees contracted with defendants, All American Fiberglass Pools, Inc.; appellant, Dave Cox, doing business as Dave Cox & Company; and The Tipton Company, Inc., for the purchase and installation of a fiberglass swimming pool in appellees' yard. The defendants were paid $13,500.00 for the pool and its installation. On July 23, 1986, appellee Jimmy Bishop signed a completion certificate, stating that the pool had been installed and was in good condition. In January 1987, appellees discovered that their pool had risen from the hole in which it had been installed, and thereafter, it developed a series of problems and defects, which appellees alleged rendered it unsafe for use.

Ultimately, appellees filed suit for rescission of the contract, and appellant, Dave Cox, defended on the grounds that the other defendants were the contractors and suppliers of the pool; that he had not guaranteed the job but merely the loan from the financial institution; and that any damages suffered by appellees resulted from their own negligence and misuse. Defendant Tipton Company failed to answer and service upon defendant Fiberglass Pools was never perfected. After a trial upon the merits, the chancellor found that appellant Dave Cox undertook to see that the pool was properly installed; that the pool was improperly installed, which was a material breach of the contract, and therefore, the contract should be rescinded. Judgment was entered, jointly and severally, against The Tipton Company and Cox for the contract price of $13,500.00

Appellant first argues that the chancellor erred in rescinding the contract as it had been substantially performed; therefore, appellant contends the appellees' proper measure of damages should be the cost of repairing the pool, because it could be repaired without economic waste.

In D. Dobbs, *Handbook on the Law of Remedies*, § 12.24 at 919 (1973), in discussing the contractor's remedies where the contractor is in default, having partially breached the contract by failing to complete it or by delivering defective work, the author states that "the doctrine of substantial performance permits [the contractor] to recover, in spite of his breach, if his performance is sufficiently 'substantial.' " In *Mitchell v. Caplinger*, 97 Ark. 278, 133 S.W. 1032 (1911), the court said:

> "Substantial performance," as defined by the cases, permits any such omission or deviations from the contract as are inadvertent or unintentional, are not due to bad faith, do not impair the structure as a whole, are remediable without doing material damage to other parts of the building in tearing down and reconstructing, and may without injustice be compensated for by deductions from the contract price.

97 Ark. at 282. This court has said that substantial performance cannot be determined by a mathematical rule relating to the percentage of the cost of completion, and the issue of substantial performance is a question of fact. *Roberts and Co.* v. *Sergio*, 22

Ark. App. 58, 733 S.W.2d 420 (1987). And in *Prudential Insurance Co. of America* v. *Stratton*, 14 Ark. App. 145, 685 S.W.2d 818 (1985), we listed the following considerations as significant in determining whether performance is substantial:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

14 Ark. App. at 151-52.

Dobbs also says that a contractor, though in substantial breach, may recover on a restitutionary theory or on quantum meruit. Recovery is allowed, not on the basis of fault or innocence, but on the basis that one person has retained benefits provided by another. Dobbs, *supra*, at 920-21. The quantum meruit theory was used to allow recovery in *Pickens* v. *Stroud*, 9 Ark. App. 96, 653 S.W.2d 146 (1983), where this court determined that even though there was no substantial performance, that did not prevent the appellees from recovering on a quantum meruit basis for the benefit of the work they did perform.

In the instant case, Jimmy Bishop testified that the pool leaks about four inches of water a week, and introduced into evidence a number of photographs substantiating problems with the pool. The pictures showed a bulge in the side of the pool underneath the ladder, a crack that goes all around the pool, and that the pool had floated out of the hole about six inches. He testified that "they" (it is unclear from the record whom appellant meant) came out and sawed the lip off the side of the pool and patched it, but it didn't hold the cracks down; and that

"they" came back again and redug up his yard to try to fix the leaks in the pool. Mr. Bishop testified that the crack is now six to seven inches wide; the appearance of the pool is terrible; and it prevents him from selling his house. He also said that because of its sharp edges, the pool is useable by children only when an adult is constantly watching, and several children have been hurt on it.

Bob Callahan testified that he had been in the business of repairing pools for fifteen years and the problems with appellees' pool were caused by improper installation. He said relief valves are standard in most pools to relieve the water drainage from underneath the pool and that he saw no such device in this pool. Moreover, he saw no sand backfill around the pool that would help to prevent a fiberglass pool from being damaged. He testified in detail regarding the problems with appellees' pool and stated the pool would have to be removed to repair the damage and that the cost would be approximately $20,000.00

Johnny Burnett, who does not sell fiberglass pools, testified he thought the pool could be saved and estimated the cost of repair to be between $2,500.00 and $5,000.00. He admitted it was possible that his company had told Mr. Bishop over the telephone that the pool would have to be replaced and that he had only looked at the pool from over a six-foot fence the morning of trial.

Charles Wood, who estimated the pool could be repaired at a cost of approximately $2,500.00, had not been active in the pool business since 1982 and admitted that he had never satisfactorily repaired a pool in a condition similar to the one in this case. He also stated that the man who installed appellees' pool did not know what he was doing, and if the pool had been built properly there would not be any problems.

██ We do not reverse the factual determinations of the trial judge unless they are clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a). Under the evidence here, we cannot find that the chancellor erred in refusing to allow appellant to recover on the basis of substantial performance. Nor can we find that the appellees have received and retained any benefits provided by the appellant which would entitle appellant to recover on a quantum meruit basis for work performed.

Appellant also argues the chancellor incorrectly relied upon

*Economy Swimming Pool Co.* v. *Freeling*, 236 Ark. 888, 370 S.W.2d 438 (1963), where the Arkansas Supreme Court stated:

It seems to be basic contract law — apparently so basic that there is little case law on the point — that where there is a material breach of contract, substantial nonperformance and entire or substantial failure of consideration, the injured party is entitled to rescission of the contract and restitution and recovery back of money paid.

236 Ark. at 891 (citations omitted).

In discussing the owner's remedies for a contractor's breach of a building or repair contract in *Handbook on the Law of Remedies, supra,* Dobbs says there is a restitution measure of recovery that will restore to the owner any amounts he has paid on the contract price and it is usually thought of in terms of rescission of the contract plus restitution of the parties to the "status quo ante."

Whatever theory is used, it is clear that restitution is not to be granted in every case for breach of contract, but only where the breach is a "vital" one, or if it represents a substantial "failure of consideration." This requirement of a substantial breach is a summary expression of the policy of fairness between the parties. What constitutes a substantial breach is not, as judges sometimes have assumed, merely a quantitative matter. Rather it is a matter of making a fair adjustment between the parties,

Dobbs at 911. The *Freeling* case is one of the cases cited by Dobbs in support of the above statement. In the instant case, in his comments from the bench at the conclusion of the evidence, the chancellor stated:

I just don't see anything other than, after looking at these pictures and hearing the testimony of the defense witnesses, that this was just a "botched" job. There is a material breach of contract. I don't think anybody would buy that house with that pool in that condition, and I think the contract should be rescinded.

From the testimony and the evidence presented, we cannot find the chancellor's decision that the contract was breached and that

appellees are entitled to rescission and restitution of their payment is clearly erroneous. Ark. R. Civ. P. 52(a).

Appellant further argues that the court erred in granting appellees rescission of the contract because appellees have not returned what they received under the contract, citing *Stanford v. Smith*, 163 Ark. 583, 260 S.W. 435 (1924), where the court said that "rescission will be granted upon the condition only that the party asking it restore to the other party substantially the consideration received, and, if he cannot do so, he is remitted to his action for damages." 163 Ark. at 588. *Stanford,* however, goes on to state:

> In 4 R.C.L., p. 511, at [Section] 23 of the chapter on Cancellation of Instruments, it is said: "In administering the remedy of cancellation, the fundamental theory on which equity acts is that of restoration. The injured party is the primary object of this purpose, and therefore it is not indispensable that the complainant be able to place the defendant *in statu quo* in those cases where it will not be inequitable to permit a rescission without so doing. If the requisite grounds for relief are clearly established, equity will not decline to grant its aid merely because circumstances intervening since the occurrence of the transaction complained of may render it difficult to restore the parties exactly to their original situations."

163 Ark. at 589. *Accord Strout Realty, Inc.* v. *Burghoff,* 19 Ark. App. 176, 718 S.W.2d 469 (1986).

In the instant case, the evidence shows that the appellees, in fact, sought to have the pool and equipment returned to the appellant by requesting the court to order it removed. After the chancellor's comments from the bench, appellees' attorney stated:

> Your Honor, in rescinding the contract and returning the $13,500.00 to Mr. Bishop, he hasn't been returned to the status quo in that he has a hole in his yard that has to be corrected. Would your order also include them to remove the pool and fill the hole?

The appellant did not agree to this request in the trial court, and the abstract does not show that the appellant objected when the

court denied the appellees' request. Issues raised for the first time on appeal will not be considered. *See Boatman* v. *Dawkins*, 294 Ark. 421, 425, 743 S.W.2d 800 (1988). *Belcher* v. *Bowling*, 22 Ark. App. 248, 252, 738 S.W.2d 804 (1987).

Affirmed.

COOPER and JENNINGS, JJ., agree.