2009 Ark. App. 437

**ROBERTS CONTRACTING COMPANY, INC.,**
Appellant,

v.

**VALENTINE–WOOTEN ROAD PUBLIC FACILITY BOARD and Pulaski County, Arkansas, Appellees.**

No. CA 08–751.

Court of Appeals of Arkansas.

May 27, 2009.

Jack East, III, Little Rock, for appellant.

Mike Wilson, Jacksonville, for appellee.

RITA W. GRUBER, Judge.

This case involves a sewer system that was not fully completed. In June 2004, appellant Roberts Contracting Company, Inc. (Roberts), agreed to build and complete a sewer system for appellee Valentine–Wooten Road Public Facility Board (VWR) by April 12, 2005. Although VWR agreed to obtain all necessary easements, it did not resolve disputes with two landowners until very late in the project. Those issues, along with wet weather and a contract dispute between the project engineer, Bond Consulting Engineers, Inc., and Pulaski County, delayed construction. More than a year past the original completion date, with at least one extension granted, Roberts walked off the job and VWR refused to pay all of Roberts's last bill. The sewer system was not operational. Roberts sued VWR for breach of contract, and VWR filed a counterclaim for damages caused by Roberts's failure to complete and repair the system. After a bench trial, the circuit court denied Roberts's claim on the ground that it had not substantially performed, and awarded liquidated damages for the delay to VWR. Roberts then filed this appeal, and VWR cross-appealed. The issues we must decide are whether Roberts substantially performed; whether Roberts may recover for the work it did complete; whether VWR was entitled to liquidated damages; and whether the trial court awarded liquidated damages for the proper period of time. We hold that, although Roberts did not substantially perform, it is entitled to appropriate compensation from VWR, and that the court did not err in awarding VWR liquidated damages.

## I. Facts and Procedural History

The contract provided that VWR would pay $2,088,166 for Roberts to build the sewer system, which was to be accepted by the City of Jacksonville, and that, if Roberts did not complete the work on time, it would pay $400 per day until completion. Roberts received an extension from VWR until October 20, 2005, but did not finish the job by then. By fall 2005, Roberts had installed and tested the sewer lines, and had installed five pump stations and the force-main pipes and related equipment.

The disputes over the easements across the Pickens and Harris properties, however, had frustrated completion. The pump station on the Pickens property still lacked power, and Mr. Harris had damaged a force main on his property that Roberts had, at VWR's direction, placed outside the easement. The Pickens easement was finally settled in January 2006, but the Harris dispute was not resolved until May 2006. Further, Bond Consulting Engineers stopped its on-site supervision of the job in December 2005 after a dispute with Pulaski County over payment. The parties disagree about whether VWR's failure to fulfill its obligations hindered Roberts's ability to perform and whether VWR agreed to another extension until May 1, 2006. Roberts left the job at this time.

On May 16, 2006, VWR refused to pay Roberts the entire amount of a bill on the ground that it had not completed all of the work. The pay estimate indicated that retainage (from work already performed and partially paid)[1] at that time was $104,408.30, and that Roberts had earned an additional $57,532.50, which had not yet been paid. Roberts refused to perform further and asserted that the purportedly incomplete work was not within the scope of the contract. It also claimed that its ability to perform had been hampered by VWR's failure to perform its obligations. A video inspection performed by Jacksonville Waste Water Utility in November 2006, more than a year after the lines had been successfully tested, revealed numerous defects and debris in the sewer system. Roberts took the position that the problems in the lines had developed during the year-long interval between its completion of the lines and the taping.

Roberts sued VWR for breach of contract, alleging that it had substantially performed, and seeking $162,502.80. Roberts also sued Pulaski County, which was a party to the contract. Pulaski County was dismissed as a party and that portion of the case has not been appealed. VWR denied that Roberts had substantially performed and filed a counterclaim requesting actual damages for Roberts's failure to complete the project. According to VWR, Roberts failed to perform the following contractual obligations: installing a working SCADA system for each pump station;[2] adequately testing its work; completing the sewer system so that it could be accepted by the City of Jacksonville; and, after completing the system, submitting "as-built" drawings. VWR also asked for liquidated damages for delays caused by Roberts.

At trial, Roberts introduced the testimony of Cotton Roberts, the company's president, who prepared the bid; Leigh Ann Pool, a program manager with Central Arkansas Planning and Development District, Inc.; Bradley Roberts, Cotton's son, who works for Roberts and supervised this project; Thomas Bond, with Bond Consulting Engineers; Gregory Wood, an inspector for Bond; and Michael Bolin, a civil engineer. At the conclusion of its case, Roberts moved to amend the pleadings to conform to its proof of damages in the sum of $177,390.80. The court granted this motion. VWR presented the testimony of Mark Wilkins, a civil engineer with the North Little Rock Sewer Department; Robert Williams, the engineering construction manager for the Jacksonville Waste Water Utility; Josh Minton, the project

---

1. The contract provided that retainage would be released upon acceptance of the Certificate of Substantial Completion.

2. The SCADA system electronically monitors a pump station. It does not operate it. Roberts bid $12,650 for each of the five SCADA units to be installed, for a total of $63,250.

engineer with Bond; and Frank Hood, VWR's chairman. In rebuttal, Roberts presented the testimony of Brad Roberts.

## II. The Circuit Court Ruling

The trial court issued a letter opinion finding that Roberts had not substantially completed[3] the project; that the sewer system was not operational; that VWR had not yet received any benefit from the project; and that Roberts would not suffer forfeiture because it had been paid for the part of the job it had completed. The court noted that the pumping stations had not been tested or turned on because electricity was not provided to them, and that, by the "plain language" of the contract, Roberts had the responsibility for providing electricity. The court stated that Roberts was also required by the contract to provide the SCADA system. It further found that the contract required Roberts to provide the as-built drawings, although, if everything else had been accomplished, the court said that it would have found that Roberts had substantially complied. The court declined to determine whether clean-up was complete, noting the conflicting testimony on that issue. Because VWR offered no admissible evidence on the amount of damages required to repair the sewer system, the court declined to award actual damages to VWR. The court said that it would, however, award liquidated damages from May 1, 2006, which it found was the end of the final extension, to August 24, 2006, when Roberts filed this lawsuit.

The court entered a judgment incorporating these findings and denying Roberts's request for damages because it had not substantially completed the project. In the judgment, the court directed Roberts to provide the SCADA system within 90 days, upon which it would be entitled to receive the contract price, and ordered it to provide VWR with as-built drawings. The court declined to rule on the clean-up work, or to award actual damages to repair the system to VWR, because the evidence was insufficient.[4] The court also made the following findings:

> [VWR] is entitled to liquidated damages on its counterclaim against [Roberts] in the sum of $46,400. [Roberts] seeks to set-off the liquidated damages awarded to VWR based upon progress payments owed to them. I have found that [Roberts] breached its contract with [VWR] by failing to complete the sewer project. When [Roberts] breached its portion of the contract, [VWR] was entitled to cease all of their contractual obligations to [Roberts] such as payments. *Stocker v. Hall,* 269 Ark. 468, 602 S.W.2d 662 (1980). The payments not required to be remitted by [VWR] would include the retainage and the $57,532.50 approved as evidenced by Plaintiff's Exhibit 22 (last page). Under a theory of unjust enrichment, [Roberts] seeks to recover funds withheld by [VWR] for work not yet completed. Brill's *Arkansas Law of Damages* § 17–3 provides that "even if a contractor has not substantially performed, and even though he is the breaching party, he *may* be able to recover for the value of partial construction." (Emphasis added.) In this case, I find that [VWR] will not be unjustly enriched if they are not required to pay for construction partially completed by [Roberts]. As [VWR]

---

3. Though the trial court referred to Roberts's efforts under the contract as not having "substantially completed" the project, the precedent discusses similar efforts in terms of substantial performance.

4. VWR has not appealed from the trial court's ruling on its failure to establish actual damages.

demonstrated, these payments served as retainage to ensure that 1) [Roberts] had money available to complete the project and 2) the work was actually completed. [VWR] will not be unjustly enriched because they are faced with completing a sewer project that has remained stagnant for months. The testimony was that, in addition to completing the sewage system, maintenance and repair work would have to be conducted in order to have the sewer system in working order.

These appeals followed.

### III. Standard of review

In civil bench trials, the standard of review on appeal is whether the trial court's findings were clearly erroneous or clearly against a preponderance of the evidence. *Rooke v. Spickelmier,* 2009 Ark. App. 155, 314 S.W.3d 718. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed. *Id.*

### IV. Direct appeal

#### A. Substantial Performance

Roberts first argues that the trial court's finding that it did not substantially perform its obligations under the contract was clearly erroneous, even though the system was not fully complete and operational. When a contractor is in default by having failed to complete the contract, he can recover in spite of his breach if his performance was sufficiently substantial. *Cox v. Bishop,* 28 Ark.App. 210, 772 S.W.2d 358 (1989). If omissions or deviations from the contract are inadvertent or unintentional; are not due to bad faith; do not impair the structure as a whole; and are remediable without doing material damage, substantial performance permits the contractor to be compensated, with deductions from the contract price. *Id.* "The doctrine of substantial performance is intended to protect the right to compensation of those who have performed in all material and substantive particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent, or unimportant omissions or defects." 15 Samuel Williston, *A Treatise on the Law of Contracts* § 44:52, at 220–21 (4th ed.2000). The *Restatement (Second) of Contracts* § 241 (1981) characterizes this question as whether a failure of performance was "material." A material breach is a failure to perform an essential term or condition that substantially defeats the purpose of the contract for the other party. AMI Civ. 2427 (2005).

Substantial performance cannot be determined by a mathematical rule relating to the percentage of the cost of completion. *Cox, supra.* There is no precise formula to use, *Roberts & Co. v. Sergio,* 22 Ark.App. 58, 733 S.W.2d 420 (1987), and the issue of substantial performance is a question of fact. *Cox, supra.* In determining whether performance is substantial, the following considerations are significant: (1) the extent to which the injured party will be deprived of the benefit that he reasonably expected; (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (4) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances, including any reasonable assurances; and (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. *Id.;*

*see also* 8 Arthur L. Corbin, *Corbin on Contracts* § 36.1 (rev. ed.1999).

Roberts challenges the trial court's finding that VWR derived no benefit from the work that Roberts completed. It also argues that it was not required to arrange for permanent electrical power to the pump stations and asserts that VWR was obligated to make those arrangements, including the one on the Pickens property. As for the other unfinished work, Roberts asserts that its other failures—not installing the SCADA system; not repairing the cut in the force main caused by Mr. Harris; not providing as-built drawings; and not repairing the problems disclosed by Jacksonville's video—did not render its performance less than substantial. It was undisputed that the gravity lines, manholes, and force mains (except for the one damaged by Mr. Harris) passed all tests required by the contract in the fall of 2005, a year before the video tape raised questions about the quality of Roberts's performance. It was undisputed that the specifications required a SCADA-system contractor to perform that installation; that Jacksonville wanted a SCADA system purchased and installed by the manufacturer with whom it had previously dealt; and that none of the SCADA-system funds held by VWR had been spent. It was also undisputed that the manufacturer of the pump stations had already been paid and was obligated to perform the tests on them, once the stations got permanent electrical power.

Roberts also urges us to recognize that some major delays were caused by VWR's failure to settle the easement across the Harris property before May 2006 or to resolve the Pickens dispute before January 2006. We note that paragraph 5.1.2 of the contract expressly required VWR to obtain all land and rights-of-way necessary for the project before Roberts started work, but VWR failed to do so. Additionally, paragraph 7.1.5 of the contract, which stated that the engineer would provide a qualified resident observer to be on site at all times when the contractor was working, was not fulfilled after Bond stopped its onsite inspection in December 2005 because of a dispute with Pulaski County.

*B. Breach of Contract/Interpretation*

Before addressing whether Roberts's purported breaches of the contract were material or sufficient to prevent its performance from being considered substantial, it is necessary to decide whether Roberts actually breached the contract. Roberts asserts that some of its purported omissions, especially arranging for permanent electrical power, were not even required by the contract.

An analysis of a breach-of-contract claim based upon the theory of substantial performance must begin with a determination of the contract's terms. 15 Samuel Williston, *A Treatise on the Law of Contracts* § 44:54, at 228. When performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach. *Taylor v. George,* 92 Ark.App. 264, 212 S.W.3d 17 (2005). It is a well-settled rule that the intention of the parties to a contract is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *Wal–Mart Stores, Inc. v. Coughlin,* 369 Ark. 365, 255 S.W.3d 424 (2007). The court is to give great weight to the construction of the contract given to it by the parties, *Synergy Gas Corp. v. H.M. Orsburn & Son, Inc.,* 15 Ark.App. 128, 689 S.W.2d 594 (1985), and it may look to the conduct of the parties to determine their intent. *Taylor, supra.* When a contract is free of ambiguity, its construction and legal effect are questions of law for the court to determine. *State Farm Fire &*

*Cas. Co. v. Amos,* 32 Ark.App. 164, 798 S.W.2d 440 (1990). Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Nash v. Landmark Storage, LLC,* 102 Ark.App. 182, 283 S.W.3d 605 (2008). The determination of whether ambiguity exists is ordinarily a question of law for courts to resolve. *Magic Touch Corp. v. Hicks,* 99 Ark.App. 334, 260 S.W.3d 322 (2007).

■ The trial court concluded that the contract unambiguously required Roberts to provide the SCADA system and the electrical power, and that Roberts's failure to perform both of these obligations rendered its performance less than substantial. As for the permanent electrical power, we disagree. We conclude that this portion of the contract was ambiguous and the parties' course of performance demonstrated that they intended for VWR to be equally responsible with Roberts in arranging for permanent power. *Taylor, supra.*

Paragraph 3.1 of the contract, which set forth Roberts's responsibilities, provided in subparagraph 3.1.1:

> It is understood that unless otherwise specifically stated in the contract documents, the contractor shall provide and pay for all materials, labor, tools, equipment, water, light, power, transportation, superintendence, temporary construction of every kind, and all other services and facilities of every kind whatsoever necessary to execute, complete, and deliver the complete project within the specified time.

Brad Roberts testified that he interpreted the contract as simply requiring Roberts to provide temporary power to the pump stations. Roberts's expert witness, Michael Bolin, testified that "it's always the owner who provides the power...." Although Josh Minton testified that the responsibility to provide power lay with Roberts, the parties' course of performance showed a joint effort to obtain power. Indeed, the parties acted as though the responsibility lay with both sides and required mutual cooperation. In the end, because of misunderstandings and miscommunication, electrical power to the remaining pump stations was not completed. We therefore hold that the trial court's finding that Roberts was solely required to provide the permanent electrical power was clearly erroneous.

■ VWR does not dispute that Roberts completed at least 90% of its work. By November 2005, Roberts had installed and tested the pipe and manholes required by Schedule I of the contract. It also installed the force-main pipe and related equipment, as well as five pump stations, set forth in Schedule II. We note that VWR approved the May 16, 2006 pay estimate reflecting that Schedule II of the contract was 100% complete, except for connecting to the Jacksonville pump stations, which (the evidence showed) Jacksonville was not yet ready to complete. The evidence demonstrated that Roberts's failure to complete the testing was, at least partially, excused by VWR's failure to timely acquire all of the necessary easements and to help get electrical power to the other pump stations. A property owner and VWR board member, Mr. Harris, dug up and with a chain saw damaged a force main that was installed where VWR and Bond had instructed Roberts to place it, outside the easement. Additionally, there also was no permanent power to the pump station on the Pickens property, where VWR failed to secure the easement until long after it was needed. As a result, neither the force main nor the pump station could be tested. In light of VWR's failure to fully perform its own obligations,

we cannot say that Roberts materially breached the contract in regard to permanent electrical power.

Although the SCADA system was an "alternate bid," which Brad Roberts stated was something that Roberts would "help" VWR with, there was testimony that the parties understood that it was Roberts's responsibility to purchase the system for installation, and the total bid awarded included this purchase item. The trial court, therefore, did not clearly err in ruling that the SCADA system was Roberts's responsibility. But it was undisputed that the SCADA system was not essential to the sewer system's operation. The pump stations could be monitored manually. We therefore cannot agree that the SCADA system's omission was a material breach or rendered Roberts's performance less than substantial. Roberts conceded at oral argument, however, that VWR was entitled to recover from Roberts $9750, the amount of the system's price increase that occurred during the delay. This concession filled the gap in VWR's proof on the cost to VWR of completing the contract on this issue. As discussed below, that amount will be off-set against the damages awarded to Roberts. VWR will be responsible for arranging the SCADA system's installation.

Although Roberts was required to supply the as-built drawings, its only role in that process was to serve as a conduit. Bond Consulting Engineers was to prepare the drawings, and Roberts was to then deliver them to VWR. The trial court found as much in its final order. We therefore hold that no material breach occurred on the as-built drawing.

Nevertheless, we cannot say that the trial court's finding of fact that Roberts did not substantially perform is clearly erroneous. The court found that Roberts breached the contract because it did not complete the project. When Roberts walked off the job, VWR did not yet have the benefit it expected, a working sewer system. This is the first significant consideration in determining substantial performance. Cox, 28 Ark.App. at 213, 772 S.W.2d at 359. "[A] high degree of difference in form and usefulness may be decisive on the question of substantial performance...." 8 Arthur L. Corbin, Corbin on Contracts § 36.7, at 347. We conclude that this consideration carries great weight in this case. A working sewer system was the essence of this contract. Unlike in the City of Whitehall v. Southern Mechanical Contracting, 269 Ark. 563, 599 S.W.2d 430 (1980), this case was not about which party was legally responsible for problems and costs incurred along the way to an operational sewer system. This sewer system was more like a building that—though much work had been done on it—could not be occupied and used when the contractor abandoned the job.

Roberts throwing its hands up and leaving the project is another significant consideration. Cox, 28 Ark.App. at 213, 772 S.W.2d at 360. While VWR fell short in cooperating on permanent power, Roberts walked out rather than continuing to push to resolve this important issue. There was no likelihood of Roberts curing, another factor that weighed against a finding of substantial performance. Cox, 28 Ark. App. at 213, 772 S.W.2d at 359. Next, because Roberts was paid for almost all of its work along the way—more than 1.8 million dollars—the scope of the contractor's potential forfeiture was relatively small. Id. The remaining factor pointed both ways: hypothetically, VWR could have been compensated for the lost benefit with cost-of-completion and cost-of-repair damages; in this case, however, VWR's proof on those issues failed. Without question, Roberts's work on the sewer sys-

tem was considerable. Based upon the record as a whole, and the settled law about the significant considerations in determining substantial performance, however, we are not left with the definite and firm conviction that the circuit court erred in finding no substantial performance.

### C. Value of the Benefit

 While we agree that Roberts did not substantially perform, we do not agree that it can have no recovery:

> Even if the contractor has not substantially performed, and even though he is the breaching party, he may be able to recover for the value of partial construction. Relying on the restitutionary principle of unjust enrichment, the breaching contractor may recover for the value of the benefit received and retained by the owner.

1 Howard W. Brill, *Arkansas Law of Damages* § 17:3, at 296 (5th ed.2004); *accord Pickens v. Stroud,* 9 Ark.App. 96, 653 S.W.2d 146 (1983). "If the defective performance, though less than 'substantial,' has conferred benefits on the defendant in excess of the defendant's injury, the defendant may be under a quasi-contractual duty to pay that excess." 8 Arthur L. Corbin, *Corbin on Contracts* § 36.1, at 334; *see also Restatement (Second) of Contracts* § 374 (1981).

 As we have noted, VWR still has possession of the retainage, plus the earned-but-unpaid funds, as well as the installed pipe, manholes, force-main pipe and equipment, and pump stations. Roberts's labor and materials have been incorporated in VWR's easements. Roberts, therefore, should be compensated for the work it performed that benefitted VWR. *See* 8 Arthur L. Corbin, *Corbin on Contracts* § 36.11. At the conclusion of Roberts's case, the trial court granted its motion to amend the pleadings to conform to

its proof of damages, in the sum of $177,390.80. Thus, Roberts proved the amount of damages to which it would have been entitled if it had substantially performed, which did not occur. Our next question, therefore, must be whether Roberts's evidence was sufficient to establish the value of the benefit received and retained by VWR. We hold that it was.

 "One of the primary ways to measure the benefit to the landowner is the market value of the contractor's labor and materials." Dan B. Dobbs, *Law of Remedies* § 12:20(2), at 461 (2nd ed.1993). In some situations, an unjust enrichment award may be based upon the payment due under the contract. Citing Dobbs, our supreme court has held that, if the party against whom an unjust enrichment claim is brought has not shown that the value of the benefit conferred is less than the payment called for by the contract, the contract price is some evidence of the value of the benefit conferred, and it is not error to base the unjust enrichment award on the contract price. *Woodhaven Homes, Inc. v. Kennedy Sheet Metal Co.,* 304 Ark. 415, 803 S.W.2d 508 (1991). This view is set forth in 8 Arthur L. Corbin, *Corbin on Contracts* § 36.11, at 374:

> In proving the reasonable value of a part performance, the contract price or rate of payment is nearly always admissible in evidence on the issue of value. If contract price is evidence of reasonable value, then contract price less damages will not greatly differ from reasonable value less damages.

 VWR failed to establish its cost-of-completion-and-repair damages at trial. It has not cross appealed the trial court's ruling rejecting its proffered evidence on these issues. And it offered no evidence that the value of the benefit conferred by Roberts's completed work was less than

the amount billed. The trial court reasoned that Roberts should not recover because VWR would incur costs in some amount to repair and complete the system. This reason is undoubtedly true, but not dispositive. VWR failed to quantify its injury. In the absence of any proof on VWR's side of the scale, Roberts's contract-based proof of the reasonable value of its services must prevail. We therefore hold that Roberts is entitled to the value of the work it did but for which it was not paid. As Roberts proved at trial, this amount was $177,390.80.

### D. Liquidated Damages

Roberts further argues that the trial court erred in awarding VWR liquidated damages as compensation for the delay. We disagree. "The general rule governing liquidated damages is that an agreement in advance of breach will be enforced if the sum named is a reasonable forecast of just compensation for the injury, if the harm is difficult or incapable of accurate estimation." *Phillips v. Ben M. Hogan Co.*, 267 Ark. 1104, 1108, 594 S.W.2d 39, 41 (Ark.App.1980) (citing *Hall v. Weeks*, 214 Ark. 703, 707, 217 S.W.2d 828, 830 (1949)). Whether a provision is actually a liquidated-damages stipulation or a penalty is a question of fact. *Id.; McIlvenny v. Horton*, 227 Ark. 826, 302 S.W.2d 70 (1957). In *American Bank & Trust Co. v. Langston*, 180 Ark. 643, 22 S.W.2d 381 (1929), the supreme court upheld a liquidated-damages provision in a contract to construct a sewer system for an improvement district because the damages were uncertain and the amount stipulated was not unreasonable. VWR introduced sufficient evidence to show that Roberts was at least partially responsible for the delay and that it quit in May 2006. Accordingly, we cannot say that the trial court erred in upholding the liquidated-damages provision. As with the SCADA-

system award, VWR may offset the liquidated-damages award against the amount it owes Roberts.

### V. Finality of the Judgment

In its last point, Roberts argues that paragraphs 3 and 4 of the trial court's decision, which provided that VWR could file further actions if Roberts did not provide the SCADA system and as-built drawings, violated the principles of finality of judgments. In light of our resolution of those two issues, we need not address this argument. Installing the SCADA, partly at Roberts's expense, is now up to VWR. And VWR no longer needs Roberts to be the conduit for the as-built drawing from Bond Consulting Engineers.

Roberts also asserts that paragraph 5 of the decision, in which the court declined to rule on final clean-up work, ran afoul of Rule 13(a) of the Arkansas Rules of Civil Procedure. This Rule requires that a pleading shall state as a counterclaim any claim, which at the time of the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. *Morsy v. Deloney*, 92 Ark.App. 383, 214 S.W.3d 285 (2005). Although we agree that VWR's claim for final clean-up work was required to be brought in a compulsory counterclaim pursuant to Rule 13(a), we see no finality problem. VWR failed to meet its burden of proof on what the final clean-up work will cost. We construe this part of the trial court's decision as one on the merits against VWR.

### VI. Cross-appeal

In its cross-appeal, VWR argues that the trial court erred by starting the liquidated-damages period too late and ending it too soon. VWR first argues that

liquidated damages should have started on October 20, 2005, the last day of the only contract extension VWR says it granted, instead of May 1, 2006. We disagree. There was evidence in the record that the parties informally agreed to extend the date of completion to May 1, 2006. Josh Minton sent a letter to Brad Roberts on May 2, 2006, stating that "the deadline for completion of this project was May 1...." That date was also stated in a "punch-list" letter from Minton to Roberts as the final date that Roberts could finish numerous items that did not require power at the pump stations.

The circuit court's decision on the end date for liquidated damages was not reversible error either. The parties' contract specified no end date for the liquidated-damages period, perhaps because VWR and Roberts assumed that all the work would be done at some point by someone. It never was. The liquidated damages must stop accruing at some point or they will become a penalty, which our law does not allow. *McIlvenny, supra.* The general rule requires these damages to be a "reasonable" forecast of just compensation. *Phillips, supra.* And when parties omit a necessary period of time from any contract, the law implies a reasonable period of time in the contract. *See generally,* AMI Civ. 2423 (2006). Ending the period of liquidated damages on the date that this action was filed was reasonable. It was consistent with the policy of encouraging parties to settle their disputes in a timely manner. Unlike in the usual case, no replacement contractor was engaged to complete this job. We reject VWR's argument that it was entitled to liquidated damages through the date of trial. When both parties shifted their energies into litigation instead of completing the sewer system, it was reasonable to stop the clock on liquidated damages. We therefore cannot say that the trial court's findings on this issue were clearly erroneous.

### VII. Conclusion

In the direct appeal, we affirm the trial court's finding that Roberts was required to provide the SCADA system; award VWR $9750 for the SCADA system's price increase; affirm the trial court's finding that Roberts did not substantially perform; reverse the trial court's denial of Roberts's claim for $177,390.80; and affirm the trial court's award of liquidated damages to VWR. The awards to VWR may be set off against the award to Roberts. On the cross-appeal we affirm the trial court's determination of the reasonable period for liquidated damages. Accordingly, we remand this case for the entry of a judgment in keeping with this decision.

Affirmed in part, reversed and remanded in part, on direct appeal; affirmed on cross-appeal.

GLOVER and MARSHALL, JJ., agree.