Cite as 2026 Ark. App. 241

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-25-179

| | |
|---|---|
| BCR CONTRACTORS OF ARKANSAS, LLC, D/B/A BEST CHOICE ROOFING OF CENTRAL ARKANSAS<br><br>APPELLANT<br><br>V.<br><br><br><br>JEFFREY HALL<br>APPELLEE | Opinion Delivered April 22, 2026<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-23-8121]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><br>AFFIRMED |

### N. MARK KLAPPENBACH, Chief Judge

This appeal concerns the replacement of a residential roof. BCR Contractors of

Arkansas, LLC, d/b/a Best Choice Roofing of Central Arkansas (BCR) appeals the entry of

judgment in favor of Jeffrey Hall in the amount of $10,722.92 plus $7,000 in attorney's fees.

BCR contends that it should have prevailed on its claim for the $6,603.97 balance owed on

a roof-replacement contract, that Hall was not entitled to any relief on his counterclaim for

negligence and breach of contract, and that attorney's fees were not allowed. BCR further

asserts that the circuit court committed reversible error by not issuing additional findings of

fact and conclusions of law. We affirm.

Hall's residence sustained storm damage that supported an insurance claim to replace

the roof. BCR approached Hall for the job. BCR's roof-replacement price was $17,326.89.

In January 2023, Hall and BCR entered into a written contract solely for roof replacement at the quoted price. Hall's insurance company issued a $10,722.92 initial payment, which Hall paid to BCR. It is undisputed that BCR was not trained or certified to repair or work on Hall's "Gutter Helmet" gutters, which are designed to allow water to drain and prevent infiltration by leaves and other obstructive material. Any gutter work done by an unapproved contractor would void Hall's warranty on the gutter system.

BCR completed its roof-replacement job over the course of a few days in February. In March, Hall received a check from his insurance company for the remaining balance, $6,603.97, but Hall did not pay BCR. In October, BCR filed a breach-of-contract action to recover the balance and alleged that Hall committed fraud.

Hall denied BCR's allegations and filed a counterclaim for the damage BCR caused to Hall's gutter system and for poor workmanship in the roof replacement. Hall sought the cost to completely redo the roof and to properly replace the gutter system, approximately $29,000, plus attorney's fees and costs. Hall alleged that BCR committed negligence and breach of contract.

Court-ordered mediation was unsuccessful. The matter was tried to the bench. The circuit court dismissed BCR's fraud claim.[1] The trial included six witnesses and multiple exhibits for the circuit court to consider. Each side agreed they entered a roof-replacement contract at the agreed-on price, and they agreed Hall made the initial payment. The salient

---

[1]The circuit court stated at the outset that this was a breach-of-contract lawsuit, that one side would win, and that the winner would be awarded reasonable attorney's fees.

issues were as follows: Was there any breach of the contract? If so, which party was in breach, and were there any resulting damages?

There was conflicting testimony about whether the roofing job was satisfactory, whether Hall informed BCR of the gutter damage, and whether BCR damaged the gutters. At trial, Hall said he told the installer about the gutter damage while the job was going on, and he tried over the summer to communicate with BCR's owner about the problems, but he did not get anywhere. Hall produced a roofing company's estimate to replace the roof and repair and replace the gutter system. P.I. Roofing, a roofing company and certified Gutter Helmet installer, gave a professional opinion about numerous improper roofing techniques, including that the original shingles were never removed as they should have been and that there was no way to fix the gutter problem (crushing and improper nailing) without taking the whole roof off and redoing it. Hall and his expert maintained that the roofing job was incomplete. Photographs of the roofing and gutter system were admitted into evidence. The contract itself was an exhibit, as were the inspection report[2] and replacement-cost estimates from P.I. Roofing.

---

[2]P.I. Roofing's inspector, John Phelps, prepared this report:

Inspected the roof to see if it was installed by proper application from Owens Corning. Lifted up the bottom corner of the shingles and noticed that the synthetic felt fell short of the bottom of the roof by 4 inches. It is supposed to start at the bottom edge of the roof at the gutter and cover all areas of roof decking. 4 inches is not application procedures to be above the bottom edge of the roof. Also, they did not install proper starter strip at the bottom or up the rake edges. They turned an architectural shingle upside down and used it for starter shingles. By doing this, it leaves a hump in the roof approximately a foot up at the bottom. A hump in the roof

3

P.I Roofing's owner and manager (Joel Johnson) testified about the details of the $18,163 roof-replacement cost and the $7,050 gutter-replacement cost. Mr. Johnson said it was mandatory to tear off the starter and first row of shingles when doing a full roof replacement, which was not done in this case. Mr. Johnson said the Gutter Helmet gutters should have been removed first and then a new layer of shingles should have been installed; the gutter system would then be professionally reinstalled if it had not been damaged in the initial removal process.

In contrast, BCR's owner (Dan Ward), director of sales (Zach Raden), and installation manager (Serio Araujo) testified to BCR's position that this was strictly a roofing contract that was completed and done well. BCR emphasized that the contract did not require it to remove or reinstall the gutters. The contract also had a provision that roof replacement

could make ice damming a whole lot easier. This is not proper application for Owens Corning. Owens Corning supplies proper starter strip that you are supposed to use across bottoms and up rake edge. I tried to see if there was any way to fix this issue and it is not possible because the shingles will only overlap the bottom edge of the roof 1/4 inch to a half inch if Gutter helmet was removed. Proper overhang at bottom of roof should be approximately one and a quarter inch to one and a half inch overhang. So the only proper way to fix the roof is redo the roof correctly with proper installation of synthetic felt that goes to the bottom of the roof with proper starter strip at bottom and up the rake edges of roof then properly overhang the first shingle, so then the rest of the roof is installed correctly. There is no other way to fix the issues. The customer has also [sic] when inspecting application procedures, I noticed lots of Gutter helmet was crushed, possibly when roof was being installed. Gutter helmet that is crushed from the outside edge would show damage on the outside edge of Gutter helmet. This Gutter helmet was damaged from the top side as if someone trampled it or crushed it from the top side approximately 10 6 foot sections around house, customer may want to have his Gutter helmet redone because of damage.

4

might cause "small dings and scratches to your gutters," which Hall accepted before construction began. They denied that the roofing work did any damage to the gutters and confirmed that BCR was not certified to work on Gutter Helmet gutters, nor did it want to work on the gutters. BCR believed that the gutters were covered by a separate insurance claim of which BCR was not involved.

The circuit court rejected BCR's breach-of-contract claim for the balance of the roofing contract, granted judgment to Hall for BCR's "defective repair work" because "the roof was not materially completed," and rejected any remaining claims. BCR was ordered to return Hall's initial payment of $10,722.92.

Hall subsequently filed a motion for attorney's fees. BCR resisted, stating that Hall's complaint was primarily in tort, not contract, such that Hall was not entitled to attorney's fees under the controlling statute. The circuit court awarded $7,000, which was less than the $8,300 requested.

After judgment was rendered, BCR requested findings of fact and conclusions of law under Ark. R. Civ. P. 52. The circuit court denied the motion. This appeal followed.

BCR contends that the circuit court erred in (1) denying its claim for breach of contract because it should have been paid in full for replacing Hall's roof and (2) finding in favor of Hall on Hall's complaint that the roofing work was incomplete and defective. BCR argues that it completed the roofing, and only the roofing, so it was entitled to full payment. These arguments are appropriately considered together.

To prove a breach-of-contract claim, one must prove the existence of an agreement, breach of the agreement, and resulting damages. *Barnes v. Wagoner*, 2019 Ark. App. 174, 573 S.W.3d 594. In civil bench trials, the standard of review on appeal is not whether there is substantial evidence to support the findings of the court but whether the court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made. *Ko v. Wills*, 2025 Ark. App. 564, 728 S.W.3d 383. In reviewing a circuit court's findings of fact, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded the testimony. *Id.*

A builder substantially performs his part of a construction contract, even though there are defects in the structure, if the defects do not impair the structure as a whole and are remedial without doing material damage to other parts of the structure in tearing down the defective parts and rebuilding the structure. *See Carter v. Quick*, 263 Ark. 202, 563 S.W.2d 461 (1978); *Cox v. Bishop*, 28 Ark. App. 210, 772 S.W.2d 358 (1989). Substantial performance cannot be determined by a mathematical rule relating to the percentage of the cost of completion, and the issue of substantial performance is a question of fact. *Cox, supra.* Some significant considerations in determining whether a builder performed substantially are the extent to which the injured party will be deprived of his expected benefit and the likelihood that the builder will cure his failure, considering all the circumstances including

6

any reasonable assurances. *See Roberts Contracting Co. v. Valentine-Wooten Rd. Pub. Facility Bd.*, 2009 Ark. App. 437, 320 S.W.3d 1; *Cox, supra.*

BCR argues that the circuit court found BCR negligent regarding the gutters, allowing Hall to prevail, but that argument is not supported by the evidence and judgment. The circuit court found in favor of Hall on the breach-of-contract claim because Hall was awarded the amount of his down payment--down to the penny--on the roofing job, not the costs related to gutter damages.

Whether the roofing job in this case was completed in line with substantial performance of workmanlike construction was a question of fact that rested on credibility. Hall presented evidence that the roofing work was substandard and incomplete. Hall also presented evidence that the roof had to be redone properly, which would cost approximately $18,000. While BCR presented evidence to the contrary, the circuit court necessarily made credibility calls and weighed the evidence against BCR. The judgment reflects that Hall prevailed on his breach-of-contract defense against BCR's claim for the remaining payment due on the reroofing contract.[3] What BCR asks us to do is reweigh the evidence, which is not proper on appeal. *Childers v. Patterson*, 2026 Ark. App. 12, 729 S.W.3d 178. It is within the province of the finder of fact to resolve conflicting evidence and to determine witness credibility. *Id.* BCR has failed to establish that the circuit court clearly erred in finding

---

[3]The judgment here places Hall in the position of having his entire insurance proceeds for roof replacement, $17,326.89, returned to him to have the roof redone.

against BCR and in favor of Hall on the breach of the roofing contract (not negligence regarding the gutters).[4]

Next, BCR asserts that the attorney's-fees award should be reversed because this case sounded primarily in tort, not contract. We disagree.

First, we should focus on whether the "bulk of the litigation" was in contract or tort. *Bollinger v. Farm Credit Midsouth, PCA*, 2026 Ark. App. 167, ___ S.W.3d ___. In this case, the bulk of the litigation was undoubtedly in contract. Both sides pursued breach-of-contract claims. The circuit court informed the parties from the bench that this was a breach-of-contract case. A party may be awarded attorney's fees in a breach-of-contract action pursuant to Ark. Code Ann. § 16-22-308 (Repl. 1999). BCR pursued its complaint for breach of contract. Hall included a counterclaim for breach of contract, and he defended against BCR's breach-of-contract claim. Hall prevailed in his defense, and he was awarded his down payment on the roof as his breach-of-contract damages. This supports the award of attorney's fees.[5]

Finally, BCR alleges that the circuit court committed reversible error by not issuing findings of fact and conclusions of law as requested under Ark. R. Civ. P. 52. We disagree.

---

[4]On appeal, BCR adds that no negligence damages could be awarded because BCR had no duty to work on or remove the gutters and was not negligent regarding the gutters. Hall did not prevail on his negligence claim, rendering this issue moot.

[5]BCR does not challenge the reasonableness of the fee award.

Rule 52(a)(1) requires that a circuit court find facts and make conclusions of law if requested by a party "at any time prior to entry of judgment[.]" Rule 52(b)(1) provides that a circuit court "may" enter additional or amended findings of fact and conclusions of law, but the request must be made "not later than 10 days after the entry of judgment[.]"

In this instance, the judgment was entered in a November 18, 2024 order. The motion for additional findings was made on December 3, 2024, certainly not before entry of the judgment, so issuing findings and conclusions was not required by the rule. The request was untimely pursuant to Rule 52(a).

Furthermore, BCR fails to demonstrate that the circuit court abused its discretion under Rule 52(b). In the absence of a showing to the contrary, this court must presume that a court acted properly and made the findings necessary to support its judgment. *Hessee v. Simoff Horse Transp., LLC*, 2020 Ark. App. 229, 599 S.W.3d 694. While additional facts and conclusions would have been welcome, we can determine the basis for the circuit court's judgment and adhere to the preceding principle that the circuit court made the necessary findings. BCR's breach-of-contract claim was rejected; Hall's negligence claim regarding the gutters was rejected; and Hall's request for breach of the roofing contract was accepted. The damages were related to the roofing contract, not the gutters. The roofing company was denied full payment as it requested, and the homeowner was reimbursed for an incomplete and improper roofing replacement.

Affirmed.

GLADWIN and HIXSON, JJ., agree.

9

*Robertson, Beasley, Shipley & Robinson, PLLC*, by: *Christopher J. Hooks*, for appellant.

*Ogles Law Firm*, by: *John Ogles*, for appellee.