2010 Ark. App. 731

Mike NOBLES, Appellant

v.

Robbyn TUMEY, Appellee.

No. CA 09–861.

Court of Appeals of Arkansas.

Nov. 3, 2010.

Rex Wallace Chronister, Fort Smith, Brian Gene Brooks, Attorney at Law, PLLC, Greenbrier, for appellant.

Michael K. Redd, J. David Dixon, Cross, Gunter, Witherspoon & Galchus, P.A., Fort Smith, for appellee.

ROBERT J. GLADWIN, Judge.

Mike Nobles appeals from the denial of a motion to vacate a judgment that the Sebastian County Circuit Court entered against him in favor of appellee Robbyn Tumey and its denial of his motion to dismiss the lawsuit. We affirm the trial court's refusal to dismiss the action and reverse its decision on the motion to vacate the judgment.

The parties entered into a business venture in June 1998 in which appellee agreed to solicit subcontractors for construction projects, from which the parties would split the profits. By October 1998, appellee had formed the belief that appellant was not paying her according to the agreement. On October 16, 1998, the parties entered into a "Memorandum of Understanding," which stated:

A dispute has arisen as to the proper division of profits derived from the joint efforts of the undersigneds. To resolve this dispute and to avoid any disruption of the business, the undersigneds mutually agree and accept the following understandings, the same to be controlling in any distribution of profits accruing from their joint business efforts since June 18th, 1998.

1. Each of the undersigneds shall be entitled to 50% of the gross profits derived from the business subsequent to June 18, 1998. Operating expenses incurred by each shall be deducted from his or her portion of the gross profits. Revenues from the business shall be paid to Mike Nobles for accounting, administration, and distribution.

2. Mike Nobles agrees that accrued gross profits payable to Robbyn Tumey, subsequent to June 18, 1998 and prior to October 15, 1998, have not been paid as contemplated by the parties. Mike Nobles agrees to deliver to James R. Filyaw, attorney for Robbyn Tumey, the sum of $25,000.00, the same to be deposited in his trust account. The sum shall not be disbursed to Robbyn Tumey until it be agreed to by the parties, or it be conclusively established that said sum is payable to Robbyn Tumey as her portion of the gross profits of the business for the period of June 18, 1998 to October 15, 1998. Mike Nobles further agrees to deliver to Robbyn Tumey the sum of $25,000.00 cash. Any amount

payable in excess of the amounts deposited or paid shall be paid promptly by Mike Nobles to Robbyn Tumey upon demand.

3. Robbyn Tumey agrees that she will immediately notify all customers of the parties that payments made pursuant to outstanding contracts shall be paid to Mike Nobles. She agrees not to divert such payments hereafter.

4. Robbyn Tumey shall receive without discount or delay on a weekly basis commencing on October 18, 1998, 50% of gross profits realized from the business.

5. Mike Noble will provide to Robbyn Tumey a complete accounting of the books and records maintained for the business for the period from June 18, 1998, through October 16, 1998, no later than November 13, 1998.

6. Profits payable to each party will be disbursed no later than October 26, 1998.

According to appellee, appellant did not comply with the terms of that agreement. On November 2, 1998, appellee filed a lawsuit against him for breach of contract and requested damages, an accounting, and attorney's fees. Appellee took a nonsuit of that action on August 27, 2001. On August 16, 2002, appellee filed this action against appellant and one of his sons, Michael Gabriel Nobles, alleging fraud, conspiracy, and breach of contract. In her complaint, appellee stated that, after repeated requests, appellant had reluctantly given her incomplete financial reports and inadequate payments. She stated that she was unable to determine the exact amount of the money that appellant had diverted.

On December 2, 2002, appellee filed a motion for an extension of time to serve appellant and his son. She stated: "Ser-

vice has been attempted by Certified Mail without result. It is anticipated that the services of a professional process server will be required." The same day, the circuit court entered an order granting appellee an additional 120 days to serve appellant and his son. On April 9, 2003, appellee filed another motion for an extension of time to serve appellant and his son. She requested an additional ninety days, stating: "Service has been attempted by Certified Mail and by a professional process server. The Defendant has secreted himself for the purposes of avoiding service. The Plaintiff has retained the services of an investigator to locate and serve the Defendant." The next day, the court entered an order granting appellee an additional ninety days to serve appellant and his son.

On May 6, 2003, appellant and his son filed a motion to dismiss appellee's complaint. They alleged that appellee had failed to offer any proof to support the facts alleged in her motion filed on April 9, 2003, which, they asserted, was filed late. They also argued that the three-year statute of limitations applicable to fraud, Arkansas Code Annotated section 16–56–105 (Repl.2005), had expired. Appellee responded that her original motion for extension filed on December 2, 2002, was timely. Robert Hough, one of appellant's attorneys,[1] sent a letter to the circuit judge on October 14, 2003, recognizing that appellee's attorney had asked for an extension of time within the statutorily-allowed period. He stated:

Therefore I will have to abandon this aspect of the Motion to Dismiss. Please allow this letter to stand as any necessary Amendment to the Motion. Michael Gabriel Nobles, and to the extent

---

1. Appellant testified that after Robert Hough died, his brother, Stephen Hough, continued to represent him.

there are new causes of action pleaded, Mike Nobles, do not abandon the Statute of Limitations issues in that same Motion.

The circuit court denied appellant's motion to dismiss.

In their answer to the complaint, appellant and his son raised the affirmative defenses of statute of limitations and accord and satisfaction. On November 22, 2004, the circuit judge sent the attorneys a letter stating that the case would be dismissed without prejudice for lack of prosecution unless the attorneys informed it to the contrary within fifteen days. Appellee's attorney immediately sent a letter requesting that the case be scheduled for trial. The court then scheduled a jury trial on March 10, 2005.

On January 25, 2005, appellee filed an amended complaint against appellant and Michael Gabriel Nobles, asserting fraud and spoliation of evidence, and alleging that appellant had provided her with incomplete reports of financial information. She stated that she was unable to determine the amount owed her from appellant because he and his son had conspired to divert the money, and that appellant had deliberately destroyed all the business records associated with the contracts procured by her with the intention of defrauding her. In a motion for continuance filed on February 16, 2005, appellee stated that appellant had testified in his recent deposition that he had disposed of all records relating to this case. The court continued the case until July 28, 2005. Appellee filed another motion for continuance on July 19, 2005. The court granted this motion and stated that the case would be reset upon the request of either party.

On October 31, 2005, appellee filed a second amended complaint for fraud, civil conspiracy, and spoliation of evidence against appellant, Michael Gabriel Nobles, and another son, Christofer Shawn Nobles. Appellee asserted that the statute of limitations should be tolled because appellant had destroyed evidence, prevented discovery, and committed perjury. She stated that he had failed to produce business records and had hidden the involvement of his sons in his scheme to defraud her and to avoid having to provide an accounting. In response, appellant and his sons pled the affirmative defenses of statute of limitations, statute of frauds, novation, and accord and satisfaction.

Appellant's attorney, Stephen Hough, surrendered his law license on September 28, 2006, but did not withdraw as appellant's counsel and did not notify appellant. On April 12, 2007, the court again warned appellee's attorney that the case would be dismissed for lack of prosecution; it did not, however, send this letter to appellant's attorney or to appellant. Appellee's attorney asked that the case be set for trial. On May 14, 2007, the circuit court sent notice to appellee's attorney and to appellant and his sons that the case was set for jury trial on August 1, 2007. The notice sent to Michael G. Nobles was returned to the court as undeliverable.

Appellee appeared for trial on August 1, 2007, but appellant and his sons did not. The court permitted appellee to testify about the merits of the case.[2] She introduced exhibits to support her testimony. On August 1, 2007, the court entered judgment for appellee against appellant and his sons in the amount of $773,055.10. This

---

**2.** When a judgment is based upon evidence presented to the court at trial, as opposed to being based on the failure of a party to appear or attend, the judgment is not a default judgment, and Arkansas Rule of Civil Procedure 55 does not apply. *Diebold v. Myers Gen. Agency, Inc.*, 292 Ark. 456, 731 S.W.2d 183 (1987).

amount included a punitive damages award of $500,000.

On August 29, 2007, appellant and his sons moved to vacate the allegedly void judgment under Arkansas Rule of Civil Procedure 60 (2007), to prevent a miscarriage of justice, because they had not received notice of the trial. They also stated that:

> If allowed to testify, the Defendant, Mr. Mike Nobles, would state that he had ... paid the Plaintiff in full for all commissions and work completed during their business agreement. Additionally, he would testify that any changes in his businesses during the last several years were done purely as a means of helping the business grow. Separate defendants Michael Gabriel Nobles and Christofer Shawn Nobles would testify that they had no involvement in their father's business. Finally, all documents supporting their claims were the file [sic] that was in the possession of Mr. Steve Hough. These records have yet to be located and there [sic] whereabouts are unknown. Appellant filed copies of the court's correspondence and his affidavit, in which he stated:

> During 2005 and 2006, I talked to Mr. Hough several times and even wrote him regarding the status of this case. He assured me that nothing else was happening and that he would let me know about any developments or court dates.

> Last Monday, August 20, 2007, my wife told me she had found a box of our mail. Apparently, some of our mail had been placed in a box by my daughter-in-law or our part-time housekeeper while my wife and I were on vacation. In this box was a notice that this case had been set for a jury trial on August 1, 2007. This was the first I had heard of a trial or anything at all going on in this case.

> As soon as I saw this notice, I tried to call Mr. Steven Hough several times. I even tried to write him a letter. None of my phone calls were returned. I even tried "googling" Mr. Hough's name on the internet, and I learned that he had been suspended from practicing law. Then, I called my attorney here in Tennessee, Mr. John More, and he told me a judgment had been entered against my son and myself.

On August 31, 2007, the court held a hearing on this motion, at which appellant, Michael Gabriel Nobles, and Christofer Shawn Nobles testified. Appellant stated that he had given all of the relevant business records to his attorney during the original action; that he had talked to Mr. Hough on two or three occasions after appellee took his deposition in January 2005; that Mr. Hough had told him that nothing was happening on the case, and that he would let appellant know if anything did happen; that he had sent Mr. Hough a letter in August 2006 asking for information on the status of the case; that he had not known that Mr. Hough had surrendered his license; that he had not received any prior notice of the trial; that he had first seen the court's letter of May 14, 2007, advising him of the trial, about ten or eleven days before this hearing, after his wife discovered a box of unopened mail (which he had believed contained only old files) on his desk; that his maid had apparently placed the letter there while they were on vacation for two weeks; that he had then unsuccessfully attempted to reach Mr. Hough; that he had discovered, in an internet search, that Mr. Hough had surrendered his license; and that he had learned of the judgment through the assistance of an attorney in Tennessee.

Appellant also testified that he was prepared to defend the lawsuit. He said that appellee had asked for more than her

share of the net profits; that she had not deducted some expenses; that she had duplicated certain figures; that appellee had asked for damages for the time period prior to the creation of their memorandum in October 1998; that he and Mr. Hough had worked for hours on the allegations of the second amended complaint and determined that he had paid appellee more than he had owed her; that he had paid appellee around $90,000 over the period of a few months; that he had, in fact, given $25,000 to appellee's erstwhile attorney to hold in escrow until they determined if any more money was owed; and that he had moved funds from one account to another to pay for workers' compensation insurance.

On August 31, 2007, the court vacated the judgment against appellant's sons but denied the motion as to appellant. The court found that appellant's sons had no privity of contract with appellee; that they had not received notice of the hearing; and that they had exhibited a meritorious defense. It stated that appellant was sent notice of the hearing; that it did not consider his testimony credible; and that he failed to establish a meritorious defense. The court dismissed the action without prejudice on April 27, 2009. Appellant filed a timely notice of appeal.

■ ₉Appellant argues that the trial court's refusal to dismiss this case should be reversed because (1) the claim for fraud was barred by the statute of limitations; and (2) appellee failed to show good cause for extension of time for service on appellant. Our standard of review is whether the trial court abused its discretion in denying the motion to dismiss. *Kuelbs v. Hill*, 2010 Ark. App. 427, 379 S.W.3d 47.

■ Appellant argues that the fraud claim was time-barred because appellee was aware of the facts giving rise to her complaint by November 1998, when she filed the first lawsuit; and when she filed this lawsuit, alleging fraud for the first

time, in August 2002, the limitations period had run. The three-year statute of limitations set forth in Arkansas Code Annotated section 16–56–105 (Repl.2005) applies to claims for fraud. *Riddle v. Udouj*, 371 Ark. 452, 267 S.W.3d 586 (2007). Absent concealment, the statute of limitations begins to run upon the occurrence of the wrong, and not when it is discovered. *Rice v. Ragsdale*, 104 Ark.App. 364, 292 S.W.3d 856 (2009). This rule applies even when there is an interval between the allegedly tortious act and the damage suffered by the plaintiff. *Id.* Fraud, however, will suspend the running of the statute of limitations. *Delanno, Inc. v. Peace*, 366 Ark. 542, 237 S.W.3d 81 (2006). When a defendant has engaged in affirmative acts of concealment, the statute of limitations begins to run at the time the cause of action is discovered or should have been discovered by reasonable diligence. *Technology Partners, Inc. v. Regions Bank*, 97 Ark.App. 229, 245 S.W.3d 687 (2006). There must be some positive act of fraud, something so furtively ₁₀planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. *Id.*

■ Only when the defense of statute of limitations is affirmatively pled, and the face of the complaint clearly shows that it is barred by the statute of limitations, does the burden shift to the plaintiff to prove by a preponderance of the evidence that the statute was tolled. *Meadors v. Still*, 344 Ark. 307, 40 S.W.3d 294 (2001). It is error to dismiss a complaint on a motion to dismiss based on a statute-of-limitations defense when there is nothing in the complaint to determine the applicable dates of occurrences that would cause the statute to run or be tolled. *Univ. Hosp. of Ark. v. Undernehr*, 307 Ark. 445, 821 S.W.2d 26 (1991). If there is a reasonable difference of opinion as to when the fraud or fraudu-

lent concealment was discovered, the issue is one for the trier of fact. *Delanno, Inc. v. Peace, supra.* This is such a case. The relevant dates of the alleged fraud, fraudulent concealment, or appellee's discovery of the fraud, from which the trial court could rule on the statute-of-limitations defense as a matter of law, are not discernable from the complaint. As the trial court stated at the conclusion of the trial, it believed that Nobles had engaged in a deliberate pattern of conduct to perpetuate a fraud. Accordingly, we affirm on this issue.

 Appellant also argues that the action should have been dismissed because appellee did not perfect service upon him in a timely manner.[3] Arkansas Rule of Civil Procedure 4(i)⌐₁₁(2010) provides that, if service of the summons is not made upon a defendant within 120 days after the filing of the complaint, the action shall be dismissed without prejudice upon motion or the court's initiative.[4] That rule also provides that time for service may be extended "upon a showing of good cause." We review a trial court's decision on a motion to dismiss for lack of compliance with Rule 4(i) with an abuse-of-discretion standard. *Wilkins v. Food Plus, Inc.*, 99 Ark.App. 64, 257 S.W.3d 107 (2007). Appellant asserts that appellee did not make the necessary showing of good cause; although she alleged in her December 2, 2002 motion for an extension that she had attempted service by certified mail without result and anticipated that the services of a professional process server would be required, she did not accompany the motion with

evidence of that statement. Also, in her April 9, 2003, motion asking for another extension, appellee stated that she had attempted service on appellant by certified mail and by professional process server; that appellant had secreted himself to avoid service; and that appellee had retained an investigator to locate and serve appellant. Appellant argues that appellee's failure to file any supporting evidence of these statements did not satisfy the rule that she show good cause. We disagree. The supreme court has indicated that statements made within a motion for extension may be sufficient to show good cause. *See Nelson v. Weiss*, 366 ⌐₁₂Ark. 361, 235 S.W.3d 891 (2006). In any event, the court granted the extensions; appellant was, in fact, served during the period of extension; and appellee justifiably relied on the orders of extension. *See King v. Carney*, 341 Ark. 955, 20 S.W.3d 341 (2000). We therefore cannot say that the trial court abused its discretion in denying appellant's motion to dismiss.

 Appellant next argues that, if we affirm the trial court's refusal to dismiss, we should reverse its refusal to set aside the judgment to prevent a miscarriage of justice. Arkansas Rule of Civil Procedure 60(a) provides that a court may modify or vacate a judgment to prevent the miscarriage of justice within ninety days of its having been filed with the clerk. A miscarriage of justice is a grossly unfair outcome in a judicial proceeding. *Rownak v. Rownak*, 103 Ark.App. 258, 288 S.W.3d 672 (2008). Our standard of review of such decisions is whether the trial court

---

**3.** Without citation to authority, and for the first time on appeal, appellant also contends that the second motion was "facially deficient" because it only referred to one defendant without identifying which one. We will not consider an argument that is not supported by citation to authority or convincing argument, or one that is made for the first time on appeal. *See Exigence, LLC v. Baylark,*

2010 Ark. 306, 367 S.W.3d 550; *Foster v. Foster,* 2010 Ark. App. 594, 377 S.W.3d 497.

**4.** Going further, appellant argues that, because this action had already been dismissed without prejudice, this dismissal should have been with prejudice. Ark. R. Civ. P. 41(b) (2010).

abused its discretion in refusing to set aside the judgment. *Watson v. Connors,* 372 Ark. 56, 270 S.W.3d 826 (2008); *Scales v. Vaden,* 2010 Ark. App. 418, 376 S.W.3d 471.

Appellant argues that his attorney's disbarment, of which he had no notice, warranted setting aside the judgment, citing *Jones–Blair Co. v. Hammett,* 326 Ark. 74, 930 S.W.2d 335 (1996). In that case, the attorney withdrew as counsel on the day of trial without notifying the client. The supreme court reversed the trial court's refusal to set the judgment aside under then Rule 60(c) because the attorney did not follow the requirements of Arkansas Rule of Civil Procedure 64 (1993), which is designed to protect clients, and the appellant had not had a fair trial. Appellant argues that, because his attorney did not comply with Section 21 (2006) of the Arkansas Supreme Court Procedures Regulating Professional Conduct, a miscarriage of justice occurred.

Clearly, Stephen Hough did not comply with Section 21. He did not notify appellant in writing that he had surrendered his license, urge him to seek other representation, or make arrangements for appellant to obtain his papers. It is true that a party cannot invoke the aid of the court in setting aside a judgment where he failed to keep himself informed. *See Diebold v. Myers Gen. Agency,* 292 Ark. 456, 460–61, 731 S.W.2d 183, 186 (1987), where the appellant "ignored the lawsuit altogether." Unlike the appellant in *Diebold,* however, appellant did make efforts to contact his attorney and keep up with the progress of this action. In light of all of the circumstances in this case, Mr. Hough's utter abandonment of appellant and failure to protect his interests were sufficient to establish a miscarriage of justice.

Appellee contends that appellant's failure to establish a valid defense, as required by Arkansas Rule of Civil Procedure 60(d), justified the trial court's refusal to set aside the judgment. Rule 60(d) states that "[n]o judgment ... shall be set aside under this rule unless the defendant in his motion asserts a valid defense to the action and, upon hearing, makes a prima facie showing of such defense." Appellant argues that he did not have to provide a prima facie case of a meritorious defense because of the miscarriage of justice resulting from his lawyer's withdrawal. We disagree. Rule 60(d) does not make an exception for cases such as this. The only time that a valid defense need not be shown is when the judgment was void, such as when the appellant has received no notice whatsoever, actual or constructive. *Bunker v. Bunker, supra.* Because the trial court did not believe appellant's testimony that he did not have actual notice of the trial, the judgment was not void; appellant, therefore, was required to make a prima facie showing of a meritorious defense.

Appellee argues that appellant failed to assert a valid defense to her action in his motion. *See Farmers Union Mut. Ins. Co. v. Mockbee,* 21 Ark.App. 252, 731 S.W.2d 239 (1987); *Bunker v. Bunker,* 17 Ark.App. 7, 701 S.W.2d 709 (1986). The more relevant question, however, is whether appellant made a prima facie showing of a meritorious defense at the hearing. *See id.; Meisch v. Brady,* 270 Ark. 652, 606 S.W.2d 112 (Ark.App.1980). Even though the trial court found that appellant's sons, whom appellee had accused of participating in appellant's fraud, had established a meritorious defense, it apparently rejected appellant's assertion of such a defense because it found him not credible; however, on review of a trial court's ruling regarding a meritorious defense, we do not defer to its assessment of the witnesses' credibility, nor do we try the issue de novo. A meritorious defense is evidence, not allegations, sufficient to justify the refusal to

grant a directed verdict against the party required to show a meritorious defense. *Goston v. Craig*, 34 Ark.App. 23, 805 S.W.2d 92 (1991).[5] It is not necessary to prove a defense, but the movant must present sufficient evidence of a defense to justify a determination of the issue by a trier of fact. *Farmers Union Mut. Ins. Co. v. Mockbee, supra.*

Appellant testified that appellee's calculations of damages had incorrectly included duplications and failed to deduct expenses; that he had moved money among accounts to ensure that workers' compensation coverage was in force; that he had given all of the business records to his attorneys, before disposing of his own copies, when he believed that the matter had been concluded; that he would pay to recreate the original bank records; and that most of the damages claimed by appellee were for payments received before the parties entered into their memorandum in October 1998, which had settled their dispute up to that time. This testimony was sufficient to establish a prima facie showing of a meritorious defense.

With these considerations, we hold that the trial court abused its discretion in denying appellant's motion to vacate the judgment.

Affirmed in part; reversed and remanded in part.

PITTMAN and KINARD, JJ., agree.

---

**5.** In determining whether a directed verdict should have been granted by the circuit court, we review the evidence in the light most favorable to the party against whom the verdict was sought and give it its highest probative value, taking into account all reasonable inferences deducible from it. *Agracat, Inc. v. AFS–NWA, LLC,* 2010 Ark. App. 458, 379 S.W.3d 64. A motion for directed verdict should be granted only if there is not substantial evidence to support a jury verdict. *Id.* Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Id.*