2011 Ark. App. 260

**CENTRAL ARKANSAS FOUNDATION HOMES, LLC, Appellant**

v.

**Rebecca CHOATE, Appellee.**

**No. CA 10–902.**

Court of Appeals of Arkansas.

April 6, 2011.

Brad A. Cazort, Little Rock, for appellant.

RITA W. GRUBER, Judge.

Central Arkansas Foundation Homes (CAFH) appeals from a judgment rescinding its construction contract with appellee Rebecca Choate and awarding CAFH $5340 in quantum-meruit damages. Four arguments are presented for reversal: 1) the circuit court lacked jurisdiction to set aside a previous judgment entered for CAFH; 2) the court abused its discretion in setting aside that judgment; 3) the court erred in rescinding the construction contract; 4) the court erred in its quantum-meruit award. We find no clear error or abuse of discretion in any of the court's rulings and affirm in all aspects.

## I. *Facts*

Rebecca Choate owned property near Wooster in Faulkner County. In 2003, she decided to build a house on a two-acre tract and contacted CAFH to review the available house plans. After meeting with a sales representative named Barbara, Choate chose the |₂Lexington plan, which the CAFH brochure depicted as having a small storage area at the back of the carport. The brochure also listed several "amenities" that were part of a CAFH home, including its being built on a "slab or concrete foundation wall." According to Choate, she adamantly conveyed to Barbara her desire for a slab foundation and her dislike of concrete-block foundations. When Barbara informed her that even a slab foundation would have some blocks showing, Choate insisted that there be no more than three blocks visible.

On November 17, 2003, CAFH and Choate signed a contract in which CAFH agreed to build the Lexington model for $82,050. The contract contained several pages of building specifications for items such as the foundation, walls, doors and windows, roof, fireplace, and driveway. Some of the specifications contradicted each other. For instance, one page described the home's foundation as a slab while another page listed the foundation material as concrete blocks and bricks. In another instance, the notation "N/A" appeared beside the listing for a fireplace while a subsequent page described the fireplace dimensions.

In December 2003, before construction began, a bank appraisal was performed based on information obtained from CAFH. The appraisal listed various characteristics of the home, including a fireplace, garbage disposal, asphalt driveway,

storage, and concrete foundation. That same month, a survey of the property was conducted for the benefit of Choate and CAFH. The survey depicted the proposed site of the new home and an existing double-wide home on the property. The new home was shown as being oriented in the same manner as the double-wide, which faced downhill toward a view. According to Choate, she informed |₃Barbara that she wanted her new home to face toward the view just as the double-wide did. CAFH received a copy of the survey and placed it in its files.

Credit problems prevented Choate from obtaining construction financing, so CAFH obtained the construction loan from One Bank on May 26, 2004. As security, Choate deeded her two-acre tract to CAFH and signed a guaranty on the loan. Thereafter, Choate hired Altus Hollimon to clear the property, prepare the site, and stake out the position of the house. Hollimon did so and, according to him, staked the site so that the house would face the view down the hill. Choate also asked CAFH to provide a septic system and install the waterline to the house. CAFH did so at a cost of $5340. According to Choate, construction began on the house in May 2005.[1]

While construction was in progress, Choate was out of town and received a call from her sister telling her that the house did not have a slab foundation and appeared to be turned in the wrong direction. According to Choate, she immediately called CAFH and told them to "stop" because she had ordered a slab foundation. She also told CAFH that she wanted the house "just like my double-wide ... looking down at the view." When Choate re-

1. The record reflects some confusion about when the house was built. Choate's complaint alleged that the house was under con-

struction in 2004, and John Oldner of CAFH testified that construction was completed in late 2004.

turned to Arkansas and viewed the house, she saw that construction had not ceased but had continued. The house was on a foundation of stacked concrete blocks, some of which were visible above ground as high as six feet. The house also was not facing toward the scenic view but rather toward the double-wide. It had no driveway, no carport storage, no fireplace, and no garbage disposal.

After CAFH completed construction, it obtained permanent home financing for Choate and tried to contact her to close the transaction. Choate did not respond until October 2005, when she sent CAFH a list of alleged construction defects, including that the house was facing in the wrong direction; that it was not built on a slab; and that the fireplace, garbage disposal, driveway, and storage area were missing. CAFH replied to Choate in writing, telling her that she had until January 6, 2006, to close on the house or CAFH would sell it. The correspondence enclosed worksheets showing that the amount Choate would owe at closing exceeded $94,000, which included interest that had accrued on the as-yet unpaid construction loan.

Choate never moved into the house. Instead, on July 31, 2006, she filed a lis pendens on her two acres and sued CAFH seeking rescission of the construction contract. Choate alleged that the house had numerous material defects, that CAFH had substantially failed to perform its obligations under the contract, and that CAFH had willfully breached the contract. CAFH denied most of Choate's material allegations and counterclaimed for an order directing Choate to close the sale and pay the debt owed on the construction loan. As an alternative, CAFH asked that, if the contract were rescinded, Choate be required to pay in quantum meruit for the value of the construction.

On April 18, 2007, Choate's attorney withdrew from representing her. Soon thereafter, CAFH's attorney asked the court to set a final hearing on the case. The attorney purportedly sent Choate a letter by regular mail on May 15, 2007, advising her that the case was set for trial on July 9, 2007. Choate, however, did not appear. CAFH did appear, and its general manager, John Oldner, testified to events leading up to the case and the amount of damages claimed. According to Oldner, the interest on the construction loan had accrued to the point that CAFH now sought $104,965.88 from Choate. The court found in favor of CAFH and entered judgment for that amount, plus attorney fees, on July 18, 2007. The court ruled that CAFH could sell the house and either remit any excess to Choate or look to Choate for the deficiency if the sales price did not cover the judgment.

Choate obtained a new attorney and moved to set the judgment aside pursuant to Ark. R. Civ. P. 60. The motion asserted that Choate had not received notice of the trial and that she had a valid cause of action based on CAFH's faulty construction and questionable business practices. At the motion hearing, Choate testified that she did not receive the trial notice, even though it was sent to her correct address. She explained that she was away from home for long periods of time in her occupation as a truck driver and that her sister, Judy Brown, collected her mail. Brown testified that she did not neglect Choate's mail and that she had no knowledge of Choate's receiving anything from CAFH's attorney in May or June 2007. Following this testimony, CAFH objected that Choate had not demonstrated a meritorious claim or defense. The attorney for Choate told the court that he stood ready to offer evidence on that point but that he understood the court would not require it. The court then set the judgment aside and

ordered a second trial without determining whether a meritorious claim or defense existed.

At the second trial, Choate presented testimonial and photographic evidence in addition to the abovementioned proof. Her photographs depicted the use of concrete blocks on the foundation; the orientation of the house facing toward the double-wide rather than down the hill; the lack of a driveway; and the lack of a storage unit on the carport. Choate's excavator, Altus Hollimon, testified that the house, as constructed by CAFH, did not face the same way that he had laid it out. Structural engineer Justin Hall and appraiser Diane Thompson testified and offered reports regarding numerous problems with the house, including that the house was not oriented as shown on the survey; that the house's foundation had cracked and settled; that interior doors were difficult to open and close due to the settling; that the carpet was "bunching up" despite the house's not being occupied; and that there was a gap in the back door that had let rain into the house, causing mildew. At the close of Choate's testimony, she stated that she wanted to return to the position she was in before the contract was executed. She asked the court to set aside her deed to CAFH, to require CAFH to hold her harmless on the construction loan, and to remove the house from her property.

CAFH, for its case, called home inspector Mike Sullivan, who testified that the house had no problems other than a few cosmetic issues. CAFH also called several of its employees as witnesses, and they testified that they received no complaints from Choate about the foundation or placement of the house until her October 2005 letter. Regarding the foundation, employee Glen Nickels testified that he viewed Choate's land prior to construction and knew that it would not accommodate a slab foundation but that he did not discuss this knowledge with Choate. Employee Nick Avants testified that CAFH had "squared up" the stakes left by Choate's excavator to the position in which the house was ultimately constructed. He further stated that, due to interest continuing to accrue on the construction loan, CAFH now sought $119,738.62 from Choate.

On June 6, 2008, the circuit court entered judgment for Choate, ruling that the house was not in substantial compliance with the parties' contract and that the contract should be rescinded. The court found that the house suffered from numerous construction defects, that the contract contemplated a slab rather than a concrete-pier foundation, and that CAFH ignored Choate's complaints that the house was facing the wrong way. The judgment directed CAFH to hold Choate harmless on the construction loan, to deed Choate's two acres back to her, and to remove the house from Choate's property.

CAFH appealed the judgment, which we dismissed for lack of finality because CAFH's quantum-meruit claim had not been adjudicated. *Cent. Ark. Found. Homes, LLC v. Choate*, 2009 Ark. App. 413, 2009 WL 1406298. On June 7, 2010, the circuit court issued a final judgment, which awarded $5340 to CAFH in quantum-meruit damages. This appeal followed.

## II. *Jurisdiction to set July 18, 2007 judgment aside*

CAFH argues first that the circuit court lacked jurisdiction to set aside the July 18, 2007 judgment in which it awarded CAFH $104,965.88. The basis of CAFH's argument is that Choate's motion to set aside the judgment and the court's order setting aside the judgment were not timely filed. We disagree.

Choate filed her motion pursuant to Ark. R. Civ. P. 60, claiming that a miscarriage of justice occurred when she did not receive notice of the trial. Rule 60(a) provides that, to correct errors or mistakes or to prevent the miscarriage of justice, the court may modify or vacate a judgment within ninety days of its having been filed with the clerk. Here, Choate filed her motion on August 29, 2007, which was forty-two days after entry of judgment. The circuit court set the judgment aside on September 28, 2007, which was seventy-two days after entry of judgment. The order was therefore timely under Rule 60(a), and the court had jurisdiction to act pursuant to that Rule.

■ CAFH contends, however, that Choate essentially filed a new-trial motion, which our rules of civil procedure require her to file within ten days after entry of judgment. Ark. R. Civ. P. 59(b) (2010); *Stickels v. Heckel,* 2009 Ark. App. 829, 370 S.W.3d 857. It is true that a Rule 60 motion may not be used to breathe life into an otherwise defunct Rule 59 new-trial motion. *Jackson v. Ark. Power & Light Co.,* 309 Ark. 572, 832 S.W.2d 224 (1992); *Stickels, supra.* But that is not what occurred here. Choate's motion did not complain of any errors or misconduct occurring during trial, nor did she challenge the validity or sufficiency of the evidence at trial. *Cf. Jackson, supra,* and *Stickels, supra* (holding that a purported Rule 60 motion was in fact a new-trial motion because it challenged the court's factual findings). Rather, Choate argued that a miscarriage of justice occurred based on lack of notice of the trial date. A miscarriage of justice is a grossly unfair outcome in a judicial proceeding and may occur where a party fails to receive notice of a trial. *See, e.g., Nobles v. Tumey,* 2010 Ark.App. 731, 379 S.W.3d 639. We conclude that Choate's motion legitimately invoked Rule 60 and was therefore timely.

### III. *Court's discretion to set aside July 18, 2007 judgment*

■ CAFH argues that, even if the circuit court had jurisdiction to set aside the July 18, 2007 judgment, it erred in doing so. In particular, CAFH contends that the court set the judgment aside in violation of Ark. R. Civ. P. 55(c), which governs default judgments. We review a circuit court's decision to set aside a judgment under the abuse-of-discretion standard. *See Toombs v. Toombs,* 2010 Ark. App. 858, 2010 WL 5132006.

■ Much of CAFH's argument proceeds from a faulty premise that the judgment set aside by the court was a default judgment. As we pointed out in *Central Arkansas Foundation Homes, LLC v. Choate,* 2009 Ark. App. 413, at 1 n. 1, 2009 WL 1406298, the judgment entered against Choate when she failed to appear at the July 2007 trial was not a default judgment. Where a party files a timely answer but does not appear at trial, and the trial court enters judgment based on the evidence, the judgment is not a default judgment and Rule 55 does not apply. *Tapp v. Landers,* 2009 Ark. App. 289, 2009 WL 1017779. That being the case, the circuit court in this instance was not obliged to fulfill the requirements of Ark. R. Civ. P. 55(c) but of Ark. R. Civ. P. 60, which governs the setting aside of judgments other than default judgments. CAFH makes no argument that the court violated Rule 60 but limits its argument to Rule 55. To that extent, the argument is not on point, and we will not address it. *See Ark. Okla. Gas Corp. v. MacSteel Div. of Quanex,* 370 Ark. 481, 262 S.W.3d 147 (2007).

■ CAFH also argues that the judgment should not have been set aside because Choate failed to prove a meritorious

claim or defense. Rule 55 and Rule 60 each require a party to demonstrate a meritorious claim or defense in order to have a judgment set aside. Ark. R. Civ. P. 55(c); Ark. R. Civ. P. 60(d) & (e) (2010). However, the transcript of the motion hearing reveals that the circuit court set the judgment aside without determining whether Choate had a meritorious claim or defense. Questions on which the circuit court has not ruled are deemed unresolved and will not be considered on appeal. *Norman v. Norman*, 347 Ark. 682, 66 S.W.3d 635 (2002); *Kralicek v. Chaffey*, 67 Ark.App. 273, 998 S.W.2d 765 (1999). Consequently, we see no basis for reversal on this issue.

## IV. *Rescission of the contract*

CAFH argues that the circuit court erred in rescinding the parties' contract. As this case arises from a bench trial, we will not reverse the circuit court's findings unless they are clearly erroneous. *Roberts Contr. Co. v. Valentine–Wooten Rd. Pub. Facility Bd.*, 2009 Ark. App. 437, 320 S.W.3d 1. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the firm conviction that a mistake has been committed. *Id.*

A contract may be rescinded if a material or vital breach occurs. 17B C.J.S. *Contracts* § 468 (1999). A material breach is a failure to perform an essential term or condition that substantially defeats the purpose of the contract for the other party. *Valentine–Wooten Rd., supra.* Here, the circuit court rescinded the parties' contract due to numerous defects in the finished product. Given the proof at trial, we are not firmly convinced that the circuit court erred in doing so.

According to Choate, the flaws in construction were so numerous and profound that she wanted the house removed from her property. In particular with regard to two of the flaws—the improper foundation and the house facing the wrong way—the court may well have determined that they were so material and vital to the home's construction, and so fundamentally defective, that they defeated the purpose of the parties' contract. *See Cox v. Bishop*, 28 Ark.App. 210, 215, 772 S.W.2d 358, 361 (1989) (affirming the rescission of a contract for installation of a swimming pool where the trial court found that the job was so badly "botched" that a material breach had occurred). CAFH directs several arguments to the circuit court's individual findings regarding the foundation, the orientation of the house, and other matters, and cites evidence in support of its claim that no breach occurred. But, evidence was presented on both sides of these issues, and it was the circuit court's prerogative to weigh the evidence and resolve conflicts in the proof. *See Heartland Cmty. Bank v. Holt*, 68 Ark.App. 30, 3 S.W.3d 694 (1999). We therefore conclude that, on the entire evidence, the circuit court did not clearly err in granting the remedy of rescission.

## V. *Court's ruling on quantum meruit*

CAFH contends that, even if its contract with Choate is rescinded, it is entitled to a minimum of $80,000 as a quantum-meruit recovery for the value of the home. A quantum-meruit claim does not involve the enforcement of a contract. *Farmer v. Riddle*, 2011 Ark. App. 120, 2011 WL 548521. It can succeed where a contract has been declared void. *Crawford v. Lee County Sch. Dist.*, 64 Ark.App. 90, 983 S.W.2d 141 (1998). Quantum meruit is generally applied under the theory of unjust enrichment and is measured by the value of the benefit conferred on the party unjustly enriched. *Riddle,*

*supra.* In order for the theory of unjust enrichment to pertain, there must be some enrichment or benefit to the party against whom the claim is made. *Crawford, supra.*

■ The circuit court in this case found that Choate would be unjustly enriched by retaining the benefit of the septic systems and utility lines that CAFH installed on her land. The court therefore awarded $5340 to CAFH as a quantum-meruit recovery for the value of that work. CAFH contends that the award is not sufficient, but we see no clear error.

■ Unjust enrichment is a fact-based inquiry, involving the weighing of equities and a determination of the value unjustly received. *Hall v. Bias,* 2011 Ark. App. 93, 381 S.W.3d 152. The court in this case apparently concluded that the house constructed by CAFH was so fundamentally at odds with Choate's contractual expectations that she was not unjustly enriched and should simply be, as nearly as possible, returned to the *status quo ante.* Accordingly, the court ordered the house removed from her property and permitted CAFH to either relocate the house or salvage the house's materials and unused appliances. We decline to reverse the court's weighing of the equities in this manner.

Affirmed.

HART and BROWN, JJ., agree.