2011 Ark. App. 369

**Wiley F. JONES and Carlene Jones as trustees of the Wiley F. Jones & Carlene Jones Living Trust, Appellants**

v.

**Dottie Kerbow BOURASSA, Appellee.**

No. CA 10–1277.

Court of Appeals of Arkansas.

May 18, 2011.

Johnnie Abbott Copeland and David L. Ethredge, Mountain Home, for appellants.

James A. McLarty III, Newport, for appellee.

ROBIN F. WYNNE, Judge.

Wiley F. Jones and Carlene Jones, as Trustees of the Wiley F. Jones and Carlene Jones Living Trust, appeal from an order of the circuit court ordering them to pay appellee, Dottie Kerbow Bourassa, a judgment in the amount of $29,108.46. Appellants argue on appeal that the trial court erred by (1) finding that an implied agreement existed between the parties, (2)

finding that Wiley Jones frustrated the performance of an implied agreement between the parties, (3) finding that appellants had been unjustly enriched, (4) not applying the common law voluntary-payment rule, (5) using an improper measure of appellants' unjust enrichment, (6) failing to set off the rental value of the home, and (7) ordering an equitable lien on the property. We affirm the order of the circuit court.

Wiley F. Jones is the father of appellee. This litigation concerns a home that appellants built for appellee to live in. After the home was built, the parties developed a disagreement regarding whether there was an agreement that appellants were to give appellee the house or whether appellee was supposed to repay the cost of building the house. On November 2, 2004, appellee filed a complaint seeking specific performance in the form of a deed to the home or, in the alternative, repayment of funds she spent for the construction of the home. On June 27, 2006, appellee filed an amendment to the complaint in which she added two counts. In Count Two of the complaint, appellee alleged that appellants promised her the deed to twenty acres of land and were now refusing to tender the deed. In Count Three of the complaint, appellee alleged that her father failed to pay child support when appellee was a minor. In an order entered December 4, 2007, the trial court dismissed Count Three of the complaint.

At trial, appellee testified that she was living in Texas and working for her father's company performing sales over the Internet when she decided, after discussions with her father, to relocate to Arkansas with her children and work for her father's business. She stated that her father had the idea to build a house for her on his property. Appellee also testified that she was not seeking the twenty acres

she alleged her father promised to her. According to appellee, there was never any discussion with her father that she would have to pay him back for the house. While the house was under construction, appellee gave some money to her father for the construction, which she stated was because he was running low on cash. Appellee paid her father's business $15,000 in two $7500 checks. On the second check, appellee wrote the notation "daddy for house payment, balance $35,000." Appellee testified that she wrote the notation because her father told her to keep track of the money being spent on the house because he was going to "get the money back out of the home." Appellee said that she bought an expensive type of stove because it was the one her father told her to get. Appellee calculated that she spent a total of $30,396.06, including the $15,000 in checks. Appellee testified that she paid the 2003 taxes on the property and, at that time, applied for and received the homestead credit. This was her first effort to register the house in her name. Appellee also took out insurance on the house.

Appellee was discharged from her job with her father's company in July 2004. Appellants later presented appellee with an agreement requiring her to pay monthly rent, obtain insurance on the house, pay part of the water bill, and be responsible for maintenance. Appellee refused to sign it. After that, appellants evicted appellee from the home. Appellee testified that before she was presented with the rent agreement, there had never been any discussion about her having to pay her father back. Appellee testified that she believed her father promised her the house and was attempting to take it back. The agreement was never put in writing. Appellee's mother testified that on two occasions, Wiley Jones told her that appellee deserved the house and that she had "proved herself."

Wiley Jones denied that there was an agreement between the parties that appellants would give appellee the house if she relocated to Arkansas and worked for him. He admitted that there was no written agreement for appellee to pay for the house. He denied telling appellee to buy a certain type of stove. He testified that the two of them had agreed that he would build the house and she would pay for it. According to Jones, the specific arrangement was for appellee to give him $30,000 and they would work out the balance through either ⌊₄monthly payments or a loan. Jones never determined an actual price and stated that appellee had all of his records. Jones claimed that he did not owe appellee the $15,000 she gave him because she had not paid any rent. Jones's wife, Carlene, testified that she agreed with everything he had said. Wanda Louise Bookout Williams, a friend of Carlene's, testified that appellee told her that Jones expected appellee to pay for the house.

On March 24, 2008, the trial court entered a judgment awarding appellee $29,108.46 and granting an equitable lien against the property. Appellants appealed to this court. Appellee filed a motion to remand and stay briefing schedule. On September 30, 2009, this court denied appellee's motion and dismissed the appeal without prejudice. On October 28, 2009, the trial court entered a nunc pro tunc order stating that Count Three of appellee's amended complaint, as well as her individual claim against Wiley Jones for child support, was dismissed with prejudice. Appellants appealed from the nunc pro tunc order, and this court dismissed the appeal for lack of a final order because Count Two of appellee's complaint remained outstanding. *Jones v. Bourassa,* 2010 Ark. App. 496, 2010 WL 2404189. On October 13, 2010, the trial court entered a nunc pro tunc order in which it dismissed

Count Two of the complaint. Appellants have appealed to this court from that order.

■ Appellants' first point on appeal is that the trial court erred by finding that there was an implied agreement between the parties. It is undisputed that there was no written agreement between the parties regarding the house built by Wiley Jones. Despite this, the trial court found that there existed between the parties an implied agreement. The elements requisite for an informal contract, however, are identical whether they are expressly stated or ⌊₅implied in fact. *Downtowner Corp. v. Commonwealth Sec. Corp.,* 243 Ark. 122, 126, 419 S.W.2d 126, 128 (1967). The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Williamson v. Sanofi Winthrop Pharm., Inc.,* 347 Ark. 89, 98, 60 S.W.3d 428, 434 (2001). Appellants argue that legal consideration, mutual agreement, and mutual obligation are missing here. However, there was evidence from which the trial court could have reasonably concluded that those elements were met. Appellee testified that her father offered to build the house for her if she moved to Arkansas and went to work for his business. Therefore, the consideration from her to him would be her agreement to work for his company. Appellee testified that both parties agreed that the house would be built for her if she did as asked. Finally, both sides would have obligations under the agreement as he would be required to build the house and she would be required to relocate and work for him. Wiley Jones presented opposing testimony, but it is the province of the trial court to weigh the evidence and determine the credibility of the witnesses. *Broggi–Dunn v. Dunn,* 2011 Ark. App. 56, 2011 WL 240736. We hold that the trial

892

court did not clearly err in finding an implied agreement existed between the parties.

Appellants' second point on appeal is that the trial court erred in finding that Wiley Jones frustrated an implied agreement between the parties. We have determined that the trial court did not err in finding the existence of an implied agreement. The evidence presented at trial revealed that Wiley Jones fired appellee from her employment and forcibly removed her from the house. Because appellee's receipt of the house was part of the foundation of the ₆agreement, and the actions of Wiley Jones resulted in appellee not receiving her end of the bargain, the trial court did not err in finding that his actions frustrated the agreement.

■ Appellants' next point on appeal is that the trial court erred in finding that they were unjustly enriched when appellee voluntarily improved their property. Appellants' argument appears to be premised on the assumption that there was not an agreement between the parties that the property was to belong to appellee. However, the trial court properly found that such an agreement existed. Quasi-contracts, or contracts implied in law, are legal fictions, created by the law to do justice. *Farmer v. Riddle,* 2011 Ark. App. 120, 2011 WL 548521. The underlying principle is that one person should not unjustly enrich himself at the expense of another. *Id.* To find unjust enrichment, a party must have received something of value, to which he was not entitled and which he must restore. *Id.* There must also be some operative act, intent, or situation to make the enrichment unjust and compensable. *Id.* The basis for recovery under this theory is the benefit that the party has received and it is restitutionary in nature. *Id.* Recovery may be had under quasi-contract where services have been

performed, whether requested or not, which have benefitted a party. *Id.* Courts, however, will only imply a promise to pay for services where they were rendered in such circumstances as authorized the party performing them to entertain a reasonable expectation of their payment by the party beneficiary. *Id.*

In *Farmer, supra,* this court upheld a finding that a husband and wife had been unjustly enriched when they allowed the wife's mother to redecorate a portion of their house to use as an apartment and then removed her from the property. The situation presented in the case ₇at bar is similar. If one believes appellee's testimony, as the trial court was entitled to do, Wiley Jones promised appellee a house, allowed her to spend considerable sums of money improving the house, and then denied her use of the property. Given these facts, it was reasonable for the trial court to conclude that appellee did not "voluntarily" improve appellants' property because, at the time the improvements were made, appellee believed the property was to belong to her. The trial court did not clearly err by finding that appellants were unjustly enriched by their retention of the improvements made by appellee.

■ Appellants' next point on appeal is that the trial court erred by failing to apply the voluntary-payment rule. The voluntary-payment rule bars the recovery of payments for obligations that are not enforceable at law when the payments are made in the absence of fraud, mistake of fact, coercion, or duress. *Vandiver v. Banks,* 331 Ark. 386, 393, 962 S.W.2d 349, 353 (1998). Appellants' argument treats the payments from appellee to Wiley Jones as if they were a gift from her to him. However, appellee's testimony established that the payments were to cover expenses on the house, the same house that, pursuant to the agreement between the parties,

was to belong to appellee but from which appellants later removed her. The trial court did not err in refusing to apply the voluntary-payment rule.

Next, appellants argue that the trial court used an improper measure of their alleged unjust enrichment. Although the trial court gives no explanation as to how it calculated the amount of the judgment, it appears that the trial court based the judgment on the amount appellee spent on improving the property. Appellants argue that the amount of any unjust enrichment should be based upon the added value to the property, not the amount spent by appellee. We have held previously that the amount of a quantum meruit recovery is measured by the value of the benefit conferred upon the party unjustly enriched. *Central Ark. Found. Homes, LLC v. Choate*, 2011 Ark. App. 260, 383 S.W.3d 418. However, the amount expended by appellee was the only value that was submitted at trial. Neither party submitted any evidence regarding the amount by which the improvements by appellee increased the value of the property. The amount appellee spent on the improvements is an indication of the value of the improvements. We find no error with the amount of the judgment awarded by the trial court.

Appellants' next point is that the trial court erred by failing to set off the amount of unpaid rent from the time that appellee lived in the house. However, there was no agreement between the parties that appellee would pay rent. After appellee moved into the house, appellants attempted to impose an obligation for rent, but appellee refused to sign the agreement. Again, the agreement between the parties, as found by the trial court, was that appellee would own the house. The trial court did not err by failing to set off an amount for unpaid rent.

Appellants' final point on appeal is that it was improper for the trial court to place an equitable lien on the property. In the order, the trial court granted a lien against the property to secure payment against the judgment and ordered the clerk of the court to sell the property at public auction if the judgment was unsatisfied thirty days after the order was entered. The evidence produced at trial established that appellee used her funds to improve the property while under the impression, furnished by appellants, that she would retain the property and that appellants then removed her from the property and have retained the improvements. The trial court's order also gives appellants an opportunity to satisfy the judgment without the property being sold. We hold that the trial court did not err in ordering that the property be sold with the proceeds to be applied to the judgment in the event appellants fail to satisfy the judgment.

Affirmed.

VAUGHT, C.J., and MARTIN, J., agree.