2012 Ark. App. 388

**Leroy BOJE d/b/a Central Arkansas Floors, Appellant**

v.

**ABBEY CARPET & FLOORS OF LITTLE ROCK, Appellee.**

**No. CA 11–1024.**

Court of Appeals of Arkansas.

June 13, 2012.

Jesse W. Thompson, Conway, for Appellant.

DOUG MARTIN, Judge.

In this one-brief case, appellant Leroy Boje contends that the Faulkner County Circuit Court erred in awarding judgment against him in favor of appellee Abbey Carpet & Floors of Little Rock (Abbey). We find no error and affirm.

Abbey filed suit against Boje on October 29, 2009, alleging that Boje improperly installed carpeting at the Greater Mount Calvary Missionary Baptist Church in Pine Bluff, causing Abbey to have to uninstall the carpet and replace it. As a result of Boje's alleged breach of contract, Abbey sought damages from Boje in the amount of $9,927.62. Boje answered and subsequently filed a counterclaim, alleging that he discovered, during the course of the installation, that the carpet was defective, but Abbey directed him to complete the installation anyway and assured him he would be paid for the work being performed. Boje's counterclaim contended that, due to Abbey's insistence on his continuing to lay the defective carpet, he was damaged in the sum of $3,260 for work and expenses expended on the job.

The matter went to trial in Faulkner County Circuit Court on June 2, 2011. Abbey's first witness was Lucy Hammett, who testified that she placed an order for the carpet at the church in March. The initial order of carpet had a "delamination problem," so the original contractor removed the carpet and cleaned the floor. Hammett reordered the carpet from Beaulieu Carpet, but the original installer was not available. Hammett then contacted Boje and hired him to install the new carpet.

After the second installation began, Hammett received word from the project manager that there was a problem with the pattern on the carpet not matching and the seams being visible. Hammett testified that she was asked to go to the church, which she did, but she first called Jim McKeand, a professional carpet inspector, to accompany her. When Hammett and McKeand arrived at the church on May 26, 2009, Hammett could see that the diamond-shaped pattern in the carpet was not matching. Hammett testified that she ended up hiring another individual to remove the carpet and install a different, unpatterned carpet. She introduced an invoice that Abbey sent to Boje totaling $9,927.62, which included the labor to remove the mismatched carpet, the new carpeting and installation materials, McKeand's inspection, and other items.

Reuben Matthews, a deacon in the church and the church's contact person with Abbey, testified that he observed part of the installation process. Matthews stated that the church representatives became unhappy with the carpet because all of the seams were visible, although he conceded that the carpet that was installed in some of the smaller rooms, such as the pastor's study and other offices, was left in place. Matthews said that Boje was given a chance to repair the seams, but he "just failed."

Jim McKeand, a professional floor-covering inspector, testified that he inspected the carpet in the church on May 26, 2009. At the time of his inspection, the glue had dried, and McKeand noted that "it is difficult, if not impossible, to try and realign mismatched seams once the glue is dried on the carpet." He explained that the "tolerance" for the particular carpet being used in the church was an inch and a half for every twelve feet of length, and if the pattern had been outside of the manufacturer's tolerance, the contractor should

have notified the manufacturer before beginning installation of the carpet. It was McKeand's opinion that the carpet was within the manufacturer's tolerance but that the installer had not properly matched the pattern during the installation. McKeand also opined that the "bowing" or "skewing" that caused the mismatch of the seams was an installation problem as well.

Abbey then called Boje to testify. Boje stated that the installation of the carpet took nearly a week. When the mismatched seams were called to his attention, Boje said that he returned to the job to try to match the seams, informing Matthews that it would take at least half a day, but Matthews stopped Boje and his workers within half an hour. Boje said that he fixed two portions of two seams, but Matthews stopped him, told him that he was wasting his time, and said that he needed to leave the job until the carpet could be pulled up. Boje stated that Anthony Clark, a sales representative for Abbey, asked him if he was ready to start pulling the carpet up, but Boje informed Clark that he had been promised he would be paid if he continued.

Boje explained that he used every tool at his disposal in installing the carpet, including seam stretchers, power stretchers, and knee kickers. He also described stay nails, which are used to align seams in carpeting, but he stated that Anthony Clark removed the stay nails that had been placed in the carpet and reprimanded Boje for using them. Hammett, called on redirect, testified that the day of trial was the first time she had ever heard anything mentioned about stay nails being pulled up.

In his own case in chief, Boje called Ryan Kye, a salesman for Abbey, who testified that Anthony Clark was on-site during the installation and was complaining about the stay nails being used on the job. Kye said that Clark pulled the nails out, saying that the client did not like them. Kye, who was thirty-seven years old and had worked in the carpeting industry since 1992, said that stay nails are commonly used in pattern-match carpets. It was his opinion that the problem with the carpet seams could have been fixed, but the church was not going to accept the carpet "no matter what [Boje did]."

Boje also testified again, describing in some detail the carpet-installation process and discussing the problems he had with the carpet skewing and elongating. Boje stated that, from the start, Matthews did not like the carpet at all. Boje stated that he told Clark that he wanted to be guaranteed that he would be paid, because even though he could have gotten the pattern issues resolved, the church members were "not liking" the carpet. Boje stated that he and Clark got Lucy Hammett on the phone, and Hammett assured him that he would be paid and instructed him to get the carpet on the floor. Boje, therefore, continued with the installation. When Matthews complained, however, he stopped the job at that time, although he came back the next day and continued working on the installation.

On the fifth day of the job, Boje said that Clark complained about the use of the stay nails. Boje explained to Clark that it was a normal part of the installation project, but Clark then said that it was "lucky that he had pulled the nails before anyone in the church had seen it." Boje went in the church at that point and observed that the carpet had shrunk back to its original, unstretched position. He said that he could have fixed the problem, but Matthews told him he was wasting his time. Boje said that, at that point, he decided to stop working on the job, but he declined to

pull up the carpet because he had not been paid.

Two other witnesses testified for Boje— Shawn Chester and Paul Boje (Leroy Boje's brother)—and both stated that Matthews was unhappy with the carpet from early on in the job. Paul Boje also stated that, based on his experience, the seams could have been made right and nothing, other than the circumstances of the church being unhappy with the carpet, would otherwise have prevented them from being able to cure any problems.

The circuit court took the case under advisement and issued an order on June 21, 2011, in which the court found that the case came down to a factual question of whether it would have been possible for the carpet to be adjusted and aligned or whether it had to be completely replaced. The court noted that there was testimony to support both parties' contentions, but the court found that the preponderance of the evidence and credibility supported Abbey's position. The court placed special emphasis on McKeand's testimony that it would not have been possible to pull up the glued-down carpet and realign the seams, while noting that Boje's witnesses consisted of employees and relatives. The court stated that it "simply finds greater weight and credibility with Mr. McKeand's independent testimony." Thus, the court found for Abbey on its breach-of-contract claim and awarded $6,184.37 in damages.[1] Boje filed a timely notice of appeal and now urges on appeal that the judgment in favor of Abbey is not supported by the evidence.

In bench trials, the standard of review on appeal is whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Found. Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000); *Jackson v. Pitts*, 93 Ark.App. 466, 220 S.W.3d 265 (2005). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, when considering all of the evidence, is left with a definite and firm conviction that a mistake has been committed. *Found. Telecomms., supra.* This court views the evidence in a light most favorable to the appellee, resolving all inferences in favor of the appellee. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the factfinder. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998).

On appeal, Boje argues that, in reaching its conclusion, the circuit court "placed too much emphasis on the testimony of the expert [witness]" and "ignored other more relevant testimony." He also complains that his testimony about the removal of the stay nails was ignored. Boje concedes that the circuit court is given the discretion to choose which testimony to believe when there is a conflict, but he urges that, because no witness rebutted his evidence that the stay nails were removed before the glue was dry, the trial court improperly ignored his evidence. In short, his entire argument is premised on the contention that the trial court improperly weighed the credibility of the evidence in such a way that the court's conclusions were not supported by the testimony.

---

1. Abbey originally sought $9,927.62 in damages. The court denied the other monetary damages requested by Abbey, including the cost of the 200 yards of carpet that was allowed to stay in place in smaller rooms in the church, the cost of McKeand's inspection, Hammett's expenses in driving to Pine Bluff, and "floor prep," finding that there had not been adequate evidence introduced at trial that the additional amounts were directly related to Boje's installation.

The appellate courts have repeatedly held, however, that it is the province of the trial court to weigh the evidence and determine the credibility of the witnesses. *Jones v. Bourassa*, 2011 Ark. App. 369, 383 S.W.3d 888; *Cent. Ark. Found. Homes, LLC v. Choate*, 2011 Ark. App. 260, 383 S.W.3d 418 (Where evidence is presented on both sides of the issue, it is the circuit court's prerogative to weigh the evidence and resolve conflicts in the proof.). Moreover, the appellate courts do not reverse a finding of fact unless we conclude that the trial court has clearly erred. *HRR Ark., Inc. v. River City Contractors, Inc.*, 350 Ark. 420, 87 S.W.3d 232 (2002). Here, the circuit court acknowledged that there was conflicting evidence that supported both parties' positions, but the court stated that it gave greater weight to the plaintiff's witnesses in making the factual finding that the carpet could not have been pulled up, realigned, and fixed. This was a matter within the province of the circuit court, and, on the whole, we are unable to determine that the court was clearly wrong.

Affirmed.

VAUGHT, C.J., and BROWN, J., agree.